**KIRBY et al. v. UNITED STATES, for and on Behalf of CROW TRIBE OF INDIANS.**

(Circuit Court of Appeals, Ninth Circuit. May 2, 1921.)

No. 3607.

1. **Indians** ⊂⟩16(7)—**Grazing lease construed as to excess in number of cattle grazed.**

   Grazing lease for a two-year term, at an annual rental, under Act Feb. 28, 1891, and Act Aug. 15, 1894 (U. S. Comp. St. §§ 4218, 4219), limiting the cattle to be grazed "to an average of 9,000 head, the maximum number at any one time not to exceed 11,500 head, and that any excess over and above such maximum number shall be paid for at the rate of $4.50 per head * * * in addition to the rental herein named," *held* to mean that for the specified annual rental lessees could graze any number up to the equivalent of 9,000 head throughout each year taken separately, and for any excess of that number the lessees should pay $4.50 per head grazed during the equivalent of a year; the excess being computed from 9,000 as the maximum for the year as a whole, and not from the 11,500 provided as a maximum at any time.

2. **Evidence** ⊂⟩451(1)—**Written offer preceding contract may be looked to in construing ambiguous contract.**

   Where a contract was ambiguous, the intention of the parties could be made clear by referring to the written offer which one party submitted preliminary to the contract.

3. **Damages** ⊂⟩78(6)—**Provision in grazing lease for excess pasturage held not a penalty.**

   Grazing lease for a two-year term, at an annual rental, under Act Feb. 28, 1891, and Act Aug. 15, 1894 (U. S. Comp. St. §§ 4218, 4219), limiting the cattle to be grazed "to an average of 9,000 head, the maximum number at any one time not to exceed 11,500 head, and that any excess over and above such maximum number shall be paid for at the rate of $4.50 per

---

⊂⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

head * * * in addition to the rental herein named," *held* not invalid as to the provision for payment of $4.50 per head, on the ground that it was intended as a penalty or liquidated damages, violating Rev. Codes Mont. §§ 5054, 5055, for such provision was merely a stipulated sum to be paid for a specified privilege, namely, to graze cattle in excess of 9,000 up to the limit of 11,500, and such excess grazing did not constitute a breach of the contract.

4. **Indians ☞16(7)—Grazing lease construed as to averaging excess grazing.**

Grazing lease for a two-year term, at an annual rental, under Act Feb. 28, 1891, and Act Aug. 15, 1894 (U. S. Comp. St. §§ 4218, 4219), limiting the cattle to be grazed "to an average of 9,000 head, the maximum number at any one time not to exceed 11,500 head, and that any excess over and above such maximum number shall be paid for at the rate of $4.50 per head * * * in addition to the rental herein named," *held* to authorize the averaging of the cattle, to determine extra payment for excess grazing, for each year separately, instead of for a two-year period, as the contract was divisible into two periods of a year each.

5. **Indians ☞16(7)—Grazing lease provision for payment for excess grazing held not invalid as payment for illegal act.**

In action by the government in behalf of the Crow Tribe to recover from lessees under a grazing lease under Act Feb. 28, 1891, and Act Aug. 15, 1894 (U. S. Comp. St. §§ 4218, 4219), for excess grazing as provided for in the lease, the contention that the agreement to pay for excess grazing was invalid as an agreement to pay for violating Rev. St. § 2117 (Comp. St. § 4107), by placing cattle on the reservation without the consent of the tribe, could not be sustained, where the complaint alleged and the answer admitted that the lease was made in pursuance of a resolution of the Crow Tribal Council, and was approved by the Secretary of the Interior, and the lease recited that it was made on behalf of the Crow Tribe under and pursuant to the action of the council of the tribe.

6. **Indians ☞16(5)—Ouster of one grazing lessee by another does not affect joint liability.**

Ouster of one lessee by another would not affect their joint liability under a lease made pursuant to Act Feb. 28, 1891, and Act Aug. 15, 1894 (U. S. Comp. St. §§ 4218, 4219).

7. **Costs ☞185—Mileage taxable only for distance that could be reached by subpœna.**

Mileage is taxable in the federal court only for the distance that could be reached by a subpœna, namely, from any point within the district, and for a distance of 100 miles, if the witness came from a point at a greater distance and without the district.

8. **Costs ☞176, 184(3), 185—Mileage and fees of witnesses not testifying, subpœnaed in good faith, and subpœna fees and expenses held properly taxed.**

Where witnesses were subpœnaed in good faith and their testimony was deemed material to the issues involved, although they did not in fact testify, it was not an abuse of discretion to tax as costs their mileage and fees and the fees and expenses of the marshal in serving subpœnas upon them.

In Error to the District Court of the United States for the District of Montana; George M. Bourquin, Judge.

Action by the United States, for and on behalf of the Crow Tribe of Indians, against George B. Kirby and others. Judgment for the United States, and defendants bring error. Remanded, with instructions to retax costs; otherwise affirmed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

On December 17, 1915, in accordance with the provisions of section 3 of the Act of Congress of February 28, 1891 (26 Stat. 794 [U. S. Comp. St. § 4218]), as amended by the Act of August 15, 1894 (28 Stat. 305 [U. S. Comp. St. § 4219]), and in pursuance of the resolution of the Crow Tribal Council of July 29, 1915, a grazing lease of tribal lands was entered into between the plaintiff's in error and the defendant in error, which lease was approved by the Secretary of the Interior on January 11, 1916. The lease was for a term of two years, and it provided for an annual rent of $31,-950, payable in equal semiannual installments. It contained the following provision: "It is further agreed that the number of cattle to be grazed on the territory described above shall be limited to an average of nine thousand (9,000) head, the maximum number at any one time not to exceed eleven thousand, five hundred (11,500) head, and that any excess over and above such maximum number shall be paid for at the rate of $4.50 per head for each and every head of such excess number, in addition to the rental herein named." The complaint of the defendant in error, hereinafter called the plaintiff, alleged the defendants had kept cattle on the lands largely in excess of the number thereof in the lease, setting forth the number thereof, and judgment was demanded for $141,049, with interest. The cause was tried before the court without a jury, and the court found that there was no excess grazing during the first year, but that during the second year there were excess cattle of 6,968 head, and that the sum due therefor to the plaintiff was $31,356. Judgment was entered accordingly for that sum, with interest at 8 per cent. per annum from and after February 1, 1918, and costs.

Grimstad & Brown, of Billings, Mont., and Gunn, Rasch & Hall and Hugh Thomas Carter, all of Helena, Mont., for plaintiffs in error.

George F. Shelton, U. S. Atty., of Butte, Mont., for defendant in error.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). [1] The merits of the controversy depend upon the construction of the clause of the contract which is quoted above. The court below construed it to mean that for the rental of $31,950 per annum the defendants could graze any number of cattle up to the equivalent of 9,000 head throughout each year taken separately, and that for any excess of that number the defendants were to pay $4.50 per head grazed during the equivalent of a year. Said the court:

"The language of the lease, that this $4.50 per head is payable for 'any excess over and above such maximum number,' does not necessarily import only cattle over and above 11,500 head, the last antecedent and maximum eo nomine, but consistent with the writing and construction can be and is taken to import cattle over and above 9,000 head, the first antecedent and also a maximum, although not in terms so characterized. Nine thousand head are the maximum for the year as a whole, the principal thing, and the 11,500 are the maximum at any time (and for such time as will serve to accomplish the 9,000 maximum), an incidental thing."

We agree with that construction of the contract. It is obvious that there was error in one phrase of the instrument, but, notwithstanding the error, the true intention of the contracting parties is not difficult to ascertain. It was clearly not their intention that there should be any free grazing, and the construction contended for by the defendants

would result in free grazing for all cattle in excess of 9,000 and under 11,500.

[2] The intention of the contracting parties is made clear by referring to the written offer which the defendants submitted preliminary to the contract, and which may be properly taken into consideration in construing the instrument. United States v. Bethlehem Steel Co., 205 U. S. 105, 118, 27 Sup. Ct. 450, 51 L. Ed. 731; Northwestern Terra Cotta Co. v. Caldwell, 234 Fed. 491, 499. 148 C. C. A. 257. In that proposal the defendants wrote:

"The minimum amount to be paid per annum, in semiannual payments in advance, $31,950. * * * The number of cattle to be grazed on this district to be 9,000 head, at the rate of $3.55 per head per annum, and that any cattle grazed on this district in excess of 9,000 head shall be paid for at the same rates per head per annum."

[3] The defendants contend that the provision for the payment of $4.50 per head was intended either as a penalty or as liquidated damages for violation of the contract in grazing an excess number of cattle on the leased premises, that in providing for such payment no provision is made about the average number of cattle, and that the true construction is that for all cattle placed on the leased land in excess of the maximum number the lessee should pay $4.50 per head, even if the cattle were on the land but for a single day, a rate so disproportionate to the value of the grazing privilege that it must be considered as a penalty, and it is argued that it is immaterial whether the $4.50 rate be regarded as a penalty or as liquidated damages, in view of sections 5054 and 5055 of the Revised Codes of Montana of 1907. The contention cannot be sustained. The provision for the payment of $4.50 per head is neither in the nature of a penalty nor liquidated damages. It is a stipulated sum to be paid for a specified privilege.

The contract does not bind the defendants to pasture no more cattle per annum than the lowest number therein specified. The plaintiff does not sue for breach of a contract. There is no allegation in the complaint upon which either a penalty or liquidated damages can be predicated. There was in fact no breach of contract. The agreement left the defendants at liberty to pasture as many cattle on the lands as they might see fit to place thereon, up to the limit of 11,500, but it provided that for cattle in excess of 9,000 and for the exercise of such privilege they should pay an increased rate of pasturage per head. The rate was increased doubtless on the theory that the presence of such excess cattle would result in some injury to the pasture, but that does not mean that the rate so fixed is compensation for damage. It was but payment for that which the plaintiff parted with and the defendants received.

[4] In view of the construction which we have given to the contract, it becomes unnecessary to discuss the assignment that the court erred in holding that the Surety Company was liable on the bond for the excess number of cattle grazed. Nor do we find that the court below erred in construing the contract to authorize the averaging of the cattle for each year separately, instead of for a two-year period. The con-

tract was clearly divisible into two year periods. The rent was apportioned to each year, and was payable for each year, and the conclusion is reasonable that the provision in regard to extra payment for excess cattle applied to each year.

[5] It is contended that, as the contract expressly limits the number of cattle which may be grazed on the leased premises, the grazing thereon of any excess number was without the consent of the Crow Tribe of Indians, and in violation of section 2117 of the Revised Statutes (Comp. St. § 4107), and that the agreement to pay for the excess cattle could impose no liability; it being an agreement to pay for violating the statute by placing cattle on the reservation without the consent of the tribe. But it does not appear from the record that any provision of the lease was inserted therein without authority from the Crow Indians. The complaint alleges and the answer admits that the lease was made in pursuance of a resolution of the Crow Tribal Council, and that the same was approved by the Secretary of the Interior. The lease itself recites that it was made on behalf of the Crow Tribe of Indians, under and pursuant to the action of the council of the tribe. The leased lands were subject to lease, under section 3 of the Act of February 28, 1891, 26 Stat. 795 (Comp. St. § 4218). The lands had been "bought and paid for" within the meaning of that statute. Strawberry Valley Cattle Co. v. Chipman, 13 Utah, 454, 45 Pac. 348. In Maricopa & Phœnix Railroad v. Arizona, 156 U. S. 347, 15 Sup. Ct. 391, 39 L. Ed. 447, the court, answering the contention that it did not appear by the record that the consent of the Indians had been given to a grant of a right of way over their land, said:

"In the first place, as the company has taken the rights granted by the statute, the legal presumption of duty performed (omnia rite, etc.) requires us to assume that the consent was given in accordance with law. And again, the company, having assumed and exercised rights which it could possess only by virtue of such consent, cannot be permitted to aver its own wrongdoing, trespassing, and violation of the statute in order to escape its just share of the burden of taxation."

In Cincinnati & Tex. Pac. Ry. v. Rankin, 241 U. S. 319, 327, 36 Sup. Ct. 555, 558 (60 L. Ed. 1022, L. R. A. 1917A, 265), the court said:

"The law 'presumes that every man, in his private and official character, does his duty, until the contrary is proved. It will presume that all things are rightly done, unless the circumstances of the case overturn this presumption.' "

[6] It is contended that it was error to hold the defendant Kirby liable for cattle belonging to certain cattle companies which were grazed on the leased premises by permission of McDaniels, and without Kirby's knowledge or consent. The evidence leads clearly to the inference that, notwithstanding that in the spring of 1916 Kirby may have been ignorant of the arrangement made by McDaniels to pasture the cattle of others on the leased lands, he acquired such knowledge before the end of that year, and that he was aware of McDaniels' acts in so pasturing other cattle during the second year of the lease, the year in which the court below found liability to have been incurred to pay the rental of $4.50 per head. There is no evidence of ouster of Kirby by

McDaniels, and, even if there were, their joint liability under the lease would not be affected thereby. Kendall v. Carland, 5 Cush. (Mass.) 74; Goshorn v. Steward, 15 W. Va. 657; Glenn v. Dungey, 4 Exch. 61.

[7] Error is assigned to the ruling of the court below in allowing as costs the mileage of witnesses who attended the trial from without the state, and from points more than 100 miles from where the court was held. The question of practice raised by the assignment is one upon which the courts have differed. In the First circuit it is held that a witness is entitled to the whole mileage without limit to the 100 miles, whether or not he resides within the jurisdiction. United States v. Sanborn (C. C.) 28 Fed. 302; The City of Augusta, 80 Fed. 297, 25 C. C. A. 430; The Governor Ames, 187 Fed. 40, 109 C. C. A. 94; Eastern S. S. Corp. v. Great Lakes Dredge & D. Co., 256 Fed. 497, 168 C. C. A. 3. The rule is to the contrary in the Second circuit. Buffalo Ins. Co. v. Providence & S. S. S. Co. (C. C.) 29 Fed. 237; The Syracuse (C. C.) 36 Fed. 830. Also in the Third circuit. The Progresso (D. C.) 48 Fed. 239. And in the Fourth circuit. Sloss Iron & Steel Co. v. South Carolina & G. R. Co. (C. C.) 75 Fed. 106. Also in the Sixth circuit. The Vernon (D. C.) 36 Fed. 113; Burrow v. Kansas City, etc., R. Co. (C. C.) 54 Fed. 278. Also in the Seventh circuit. Eastman v. Sherry (C. C.) 37 Fed. 844. Also in the Eighth circuit. Pinson v. Railroad Co. (C. C.) 54 Fed. 464; Griggsby Const. Co. v. Louisiana & N. W. R. Co. (C. C.) 123 Fed. 751; United States v. Green (D. C.) 196 Fed. 255. In the Ninth circuit, in Hunter v. Russell (C. C.) 59 Fed. 964, Judge Knowles followed the rule of the First circuit, but in Hanchett v. Humphrey (C. C.) 93 Fed. 895, Judge Hawley ruled otherwise, and held that mileage is taxable for a witness from any point within the district and for a distance of 100 miles, if the witness came from a point at a greater distance, and without the district. In United States v. Southern Pac. Co. (C. C.) 172 Fed. 909, Judge Bean followed the ruling in Hanchett v. Humphrey. In United States v. Southern Pac. Co. (D. C.) 230 Fed. 270, Judge Trippet held likewise. In neither of the last two cases was mention made of the decision of this court in Jesse D. Carr Land & Live Stock Co. v. United States, 118 Fed. 821, 55 C. C. A. 433, in which Judge De Haven, speaking for the court said:

"The appellant's motion to strike from the bill of costs the amount claimed by the appellee for mileage and fees of certain witnesses, who came from without the state and more than 100 miles from the place of trial, was properly denied"—citing United States v. Sanborn (C. C.) 28 Fed. 299.

Upon that decision the plaintiff in the present suit relies. We are of the opinion that the remarks of the court in that case should not be held decisive of the question here involved. The ruling was made, not on a motion to retax the costs, but on a motion to strike out the costs taxed as mileage and for expenses of witnesses. It does not appear that the question whether or not the witnesses were entitled to mileage for more than 100 miles was presented or discussed. Judge Hawley participated in the decision, notwithstanding his prior ruling in Hanchett

v. Humphrey. We think it should not stand in the way of adopting the rule which is sustained by the weight of authority, as well as by the weight of reason, that mileage is taxable in the federal court only for the distance that could be reached by a subpœna, and we so hold.

[8] But we think there was no abuse of discretion in taxing as costs the mileage and fees of witnesses who did not in fact testify, and in taxing as costs the fees and expenses of the marshal in serving subpœnas upon them. It is shown by the bill of exceptions that the witnesses were subpœnaed in good faith, and that their testimony was deemed material to the issues involved. Clark v. American Dock & Imp. Co. (C. C.) 25 Fed. 641; Burrow v. Kansas City, Ft. S. & M. R. Co. (C. C.) 54 Fed. 278.

The cause is remanded to the court below, with instructions to retax the costs of the mileage of witnesses in accordance with the foregoing opinion. In other respects the judgment is affirmed.