## LADD & TILTON BANK v. UNITED STATES.

Circuit Court of Appeals, Ninth Circuit.
January 30, 1929.

No. 5533.

Prescott W. Cookingham, Leo J. Hanley, and C. R. Stearns, all of Portland, Or., for appellant.

George Neuner, U. S. Atty., and J. W. McCulloch, Asst. U. S. Atty., both of Portland, Or.

Before RUDKIN and DIETRICH, Circuit Judges, and NORCROSS, District Judge.

NORCROSS, District Judge. This is a suit by the United States government against the appellant to recover the sum of $9,000, together with interest and costs. Suit is based upon the following facts:

Prior to April 30, 1920, one George Fick, owner of $3,000 par value registered Victory notes, and one Andrew Cantrall, owner of $6,000 par value of such notes, had deposited the same with the Bank of Jacksonville, state of Oregon, for safe-keeping. Subsequent to such deposits, and during the months of March and April, 1920, the cashier of the said Bank of Jacksonville forged the names of the owners of such bonds, added his certificate as witnessing such forged signatures as cashier, and sent the bonds with such forged indorsements to the appellant bank to be sold, and the Bank of Jacksonville to be given credit for the proceeds. Ladd & Tilton Bank delivered all of said bonds without other indorsement to the Federal Reserve Bank of San Francisco, as fiscal agent of the United States, for exchange for coupon bonds of the same denomination. The coupon bonds in due course were received from the Secretary of the Treasury by Ladd & Tilton Bank, and afterwards sold by it. Ladd & Tilton Bank gave the Bank of Jacksonville credit

for the bonds received by it in the general checking account of the latter bank. Shortly thereafter the Bank of Jacksonville failed, and, upon Fick and Cantrall demanding the return of their bonds, the loss was discovered. Upon affidavits of Fick and Cantrall, the Secretary of the Treasury issued to them new notes equaling in amount the notes they had lost by reason of the forgeries.

The principal question of law presented upon the record involves the ruling of the court below in striking from defendant's second amended answer allegations to the effect that on or about the 16th day of September, 1920, the plaintiff, United States Government, was notified that the signatures of the payees on said Victory notes had been forged, and failed and neglected to notify the defendant bank of such forgeries, or that any liability was claimed against it, until about April 17, 1922; that defendant bank was without fault, and had no knowledge of such forgeries; that, at the time of the suspension of the said Bank of Jacksonville, and at the time of the discovery of said forgeries by plaintiff, defendant Ladd & Tilton Bank held a large amount of securities from said Bank of Jacksonville as general security for any and all indebtedness then or thereafter due or to become due Ladd & Tilton Bank; that it also held a general guaranty covering the Bank of Jacksonville obligation signed by responsible guarantors; that the Bank of Jacksonville was possessed of sufficient assets to have paid the sum of $10,000 and more on any preferred claim that might be presented; that prior to April 17, 1922, the Bank of Jacksonville was completely liquidated and its assets sold and the proceeds distributed to the creditors.

At the trial, counsel for appellant made an offer to prove the facts as set out in the stricken allegations, and assign error in the order denying such offer.

Counsel for appellant contend that liability was that of a surety only. Counsel for the government contend that liability rests upon an implied warranty.

We think it clear that the liability of the appellant bank was upon an implied warranty of the genuineness of the notes bearing the forged indorsements. The right to sue to recover back from the Ladd & Tilton Bank the value of the exchanged securities was not conditioned upon either demand, or the giving of notice of the discovery of the forgeries. United States v. National Exchange Bank, 214 U. S. 302, 29 S. Ct. 665, 53 L. Ed. 1006, 16 Ann. Cas. 1184.

As also held by this court in United States v. National Bank of Commerce, 205 F. 433, 436, the cause of action in favor of the government against the appellant bank, through which it received for exchange the registered Victory notes with the forged signatures of the payees, arose immediately upon the making of such exchange.

While the right of action existed independent of demand or notice, and arose immediately, the important question in this case is whether failure to give notice of the discovery of the forgery nevertheless may not be a defense to such action, providing delay has worked an injury to defendant. It appears to have been assumed that, if the right of action rested on implied warranty, notice or demand prior to suit was immaterial.

The case of United States v. Nat. Exchange Bank, cited supra, and relied on by counsel for appellee, was an action to recover from the defendant bank an amount paid to the bank on account of certain forged pension warrants. In that case the defendant bank alleged in its answer damage occasioned by reason of negligence and laches upon the part of the government in failing to give notice, "but the agreed facts contain no evidence to support the allegation." The trial court rendered judgment in favor of the plaintiff. (C. C.) 141 F. 209. The Circuit Court of Appeals for the First Circuit by a divided court reversed the decision of the District Court, and held in effect that notice within a reasonable time after the discovery of the forgery was a prerequisite to recovery, regardless of injury caused by delay. 151 F. 402. Upon appeal to the Supreme Court, the judgment of the Circuit Court of Appeals was reversed, and the judgment of the District Court affirmed. Concluding the opinion of the Supreme Court, Chief Justice White, speaking for the court, said:

"Under these conditions the warranty of genuineness implied by the presentation and collection of the checks bearing the forged indorsement having been broken at the time the checks were cashed by the United States, and the cause of action having therefore then accrued, the right to sue to recover back from the Exchange Bank was not conditioned upon either demand or the giving of notice of the discovery of facts which by the operation of the legal warranty were presumably within the knowledge of the defendant.

"The conclusion to which we have thus come renders it unnecessary to consider whether if the facts presented merely a case of mutual mistake, where neither party was in fault, and reasonable diligence was re-

quired to give notice of the discovery of forgery if there was lack of such diligence, it would operate to bar recovery by the United States, although the Exchange Bank was not prejudiced by the delay."

■ While the statute of limitations does not run against a right of action in favor of the government (United States v. Thompson, 98 U. S. 486, 25 L. Ed. 194), as said in United States v. Nat. Exchange Bank, 270 U. S. 527, 46 S. Ct. 388, 70 L. Ed. 717, "The United States does business on business terms." Where the right of action is for the recovery of money paid upon a forged instrument, the United States is subject to the same rules applicable to litigants generally. United States v. Nat. Exchange Bank, supra; Cooke v. United States, 91 U. S. 389, 23 L. Ed. 237; United States v. Bank of New York (C. C. A.) 219 F. 648, L. R. A. 1915D, 797; United States v. Clinton Nat. Bank (C. C.) 28 F. 357. The following authorities also in principle we think support the view here taken: United States v. Bank of Metropolis, 15 Pet. (40 U. S.) 377, 392, 10 L. Ed. 774; United States v. Barker, 12 Wheat. (25 U. S.) 559, 6 L. Ed. 728; United States v. Union Nat. Bank, 28 Fed. Cas. p. 333, No. 16597; United States v. Nat. Park Bank (D. C.) 6 F. 854.

■ Although the mere right of action is not affected by delay in demand or notice, both reason and authority support the view that a defendant, otherwise liable because of money or property obtained upon a forged bill, note, or other instrument, may defend upon the ground that delay in notice or demand after discovery of the forgery has worked an injury, such as loss of recourse and indemnity from others responsible to defendant on account of the forgery.

Lowell, Circuit Judge, who tried the case of United States v. National Exchange Bank, supra, in his opinion said:

"But recovery cannot be had, where it would be inequitable, and especially where the negligence of the plaintiff in making the payment, or his delay after discovering the forgery in notifying the defendant, has damaged the latter. * * * While delay is irritating, while in some cases it may give rise to a presumption of fact that damage has ensued, yet, unless some damage to the defendant is shown, mere delay is insufficient to defeat the plaintiff's recovery." 141 F. 210, 211.

In the dissenting opinion of Aldrich, District Judge, in the case before the Circuit Court of Appeals, supra, appears the following:

"Delay being a matter of defense, it is difficult to see why it should operate to bar recovery, unless the party receiving the money on forged indorsements has been damaged by the delay." 151 F. 408.

While the Supreme Court in reversing the judgment of the Circuit Court of Appeals, and in affirming that of the District Court, held that the case did not come within the exceptional rule, as where one having peculiar knowledge of or charged with some duty to know a signature nevertheless pays on a forgery thereof, in which case reasonable notice is required, and did not expressly rule on the question whether delay in asserting a right of action or giving notice of the forgery would be a defense if injury resulted from such delay, there is nothing in the opinion contrary to that view. The opinion states one of the positions, among others, taken by counsel for the government in the case, to wit, "that even if the checks were commercial paper and governed by such rule mere negligent delay in giving notice of the discovery of the forgery would not prevent recovery, unless the Exchange Bank established by proof that it had thereby suffered damage." Page 310 of 214 U. S. (29 S. Ct. 667).

Commenting upon an early New York case, the opinion reads:

"True it is a decision of the Supreme Court of New York, rendered in 1841 (Canal Bank v. Bank of Albany, 1 Hill, 287), involving analogous facts, has by some textwriters been treated as holding a doctrine which might be considered as establishing that the exceptional rule, as somewhat qualified by the decision in question, would be applicable to a case like the one before us. In the case referred to it was decided that where the bank upon which a draft was drawn paid it in ignorance of the fact that the supposed signature of the person to whom it was payable had been forged, it could not recover back the money without exercising reasonable diligence to give notice after the discovery of the forgery. We think, however, it is apparent that the court considered not that it was applying the exceptional rule, but that it was simply announcing its conception of the general principle as to the right to recover back money paid by mutual mistake. This is evident, since the court, after holding that the case before it was not governed by the exceptional rule, remarked that 'where each party enjoys the same chance of knowledge, no case demands anything more than reasonable diligence in giving notice after the discovery of the forgery.' No authority, however, was cited on this proposi-

tion, nor was any intimation given by the court as to whether, even if there had been negligence in giving notice, recovery would not be permitted if no damage had been occasioned by the delay to the party to whom the payment had been made." Pages 313, 314, of 214 U. S. (29 S. Ct. 668).

The opinion further quotes with approval the following, among other excerpts, from the opinion delivered by Mr. Justice Gray in the case of Leather Manufacturers' Nat. Bank v. Merchants' Bank, 128 U. S. 26, 9 S. Ct. 3, 32 L. Ed. 342:

"One who by presenting forged paper to a bank procures the payment of the amount thereof to him, even if he makes no express warranty, in law represents that the paper is genuine, and, if the payment is made in ignorance of the forgery, is liable to an action by the bank to recover back the money which, in equity and good conscience, has never ceased to be its property. * * *

" 'Whenever money is paid upon the representation of the receiver that he has either a certain title in property transferred in consideration of the payment, or a certain authority to receive the money paid, when, in fact, he has no such title or authority, then, although there be no fraud or intentional misrepresentation on his part, yet there is no consideration for the payment; and the money remains, in equity and good conscience, the property of the payer, and may be recovered back by him, without any previous demand, as money had and received to his use. His right of action accrues, and the statute of limitations begins to run, immediately upon the payment.' " Page 316 of 214 U. S. (29 S. Ct. 669).

The effect of the decisions of the Supreme Court in the National Exchange Bank and Leather Manufacturers' Bank Cases is to hold that, when the facts are similar to those in the case at bar, there is a primary liability upon implied warranty, and the right of action accrues at the time of payment, but that the right of recovery is based on the equitable doctrine of money had and received to the payor's use, which "remains in equity and good conscience, the property of the payor."

As said by the Circuit Court of Appeals for the Eighth Circuit in Sanford v. First National Bank, 238 F. 298: "The right to recover money had and received is equitable, and to prevail the plaintiff must show that in good conscience he is entitled to the money."

The decision of the Supreme Court in the National Exchange Bank Case, if it does not expressly approve the rule that in a case of implied warranty failure to give notice where there is a resultant injury is a defense to the action, by inference at least would seem to have approved such rule.

While the Circuit Court of Appeals in that case applied too strict a rule in respect to notice, and to that extent the opinion was expressly disapproved, the expressions of that court in respect to notice in the case of forged instruments are entitled to respectful consideration in determining the true rule. From the opinion we quote the following excerpt: "However this may be, any demand for prompt notice in cases of forgeries is wholesome. When discovered, forgeries should not be coddled, but should be made known, both to the public prosecutor and to those immediately concerned. * * * "

It would be a harsh rule and wholly devoid of equity and good conscience which would provide that one paying a forged instrument, after discovering the forgery, might nevertheless complacently rely on an implied warranty for the full period of the statute of limitations and then recover from one who also innocently relied on the validity of the indorsement, and who, by delay in the bringing of the action or giving notice, has lost all means of protecting himself from those primarily liable. As the statute of limitations does not run against the government, its delay could be indefinite. Such a rule ought not to be and is not the law.

The rule applicable to this case has not, we think, changed from that applied by Brewer, then Circuit Judge, in affirming the judgment of the District Court in the case of United States v. Clinton National Bank (C. C.) 28 F. 357. In that case a paymaster in the United States Army, on October 14, 1868, drew his check on the Assistant Treasurer of the United States at New York for $100 bounty money, payable to the order of one Thrall. The check was paid to the Clinton Bank on a forged indorsement of the payee. Nearly twelve years later, the United States commenced action to recover from the bank. As a defense to the action, the bank set up that the government was informed of the fact that the "indorsement was forged soon after the payment of the check, and before the end of the year 1868, and that it never notified the defendant, or any one else interested in the transaction, until about ten years thereafter, and until the defendant had lost all opportunity to protect itself." To this defense the government demurred. The demurrer was overruled, and, the plaintiff standing on the demurrer, judgment was entered for defendant. From the opinion affirming the

338

judgment, we quote: "The principal cases cited by counsel for the government are those in which the liability of the defendant, being absolute, fixed, and constant, the question has been one purely of the statute of limitations, while in the case at bar the right of recovery is conditioned on promptness in giving notice. The distinction between the two is obvious."·

The rule as stated in Corpus Juris appears to be supported both in reason and authority: "The right, however, of one who has paid a forged bill or check to recover the same may depend on his diligence in giving notice after discovering the forgery. Where there has been a neglect to give notice of such fact, and the party receiving payment is injured by losing his opportunity of recourse and indemnity, there can be no recovery of the payment. However, the diligence required is not in making the discovery but in giving notice thereafter. It is sufficient to give notice when the forgery is discovered, and it is the duty of the party to give notice at such time." 8 C. J. 609.

The court below was in error in sustaining the motion to strike.

The contention that the government failed to establish damages we think without sufficient merit to require extended consideration.

■ Error is assigned to the ruling of the court below denying appellant's motion to retax costs. Two witnesses for the government were allowed their necessary expenses in traveling to the place of trial, which was at Portland, Or., and returning to their homes in the District of Columbia and the state of Virginia, respectively. The government contends that the allowance is authorized by section 850 of the Revised Statutes of the United States (28 USCA § 604), which provides that:

"When any clerk or other officer of the United States is sent away from his place of business as a witness for the Government, his necessary expenses, stated in items and sworn to, in going, returning, and attendance on the court, shall be audited and paid; but no mileage or other compensation in addition to his salary, shall in any case be allowed."

In support of that view, it cites United States v. Sanborn, 135 U. S. 271, 10 S. Ct. 812, 34 L. Ed. 112, and two District Court decisions, United States v. Southern Pacific Co. (C. C.) 172 F. 909, and United States v. National Surety Co. (D. C.) 168 F. 314.

But in the Sanborn Case the only point discussed was whether under this section the government could recover any costs at all; the question of the extent of the right was not raised or decided. In Kirby v. United States, 273 F. 391, upon a review of the decisions this court specifically held that, "mileage is taxable in the federal court only for the distance that could be reached by a subpœna"; that is, for any distance within the district, or out of the district for not to exceed 100 miles from the place where the court is held. To be sure the claim there involved was for the mileage of a witness not in the employ of the government. But why the restriction in the one case and not in the other, when the reach of a subpœna is the same in both? In either case the desired testimony may be produced in the form of a deposition and thus may be avoided the burden of the heavy and unnecessary expense of bringing a witness across the continent to testify. Indeed we think that, while the precise point was not involved in the Sanborn Case, the reasoning therein employed strongly suggests that the limitation applicable in the one case is likewise to be observed in the other. In concluding its decision, the court said:

"In other words, when the government is successful in a suit, the 'necessary expenses' of its witnesses, of the class described in section 850, take the place, in its bill of costs, of the per diem and mileage which, but for that section, would have been taxed and allowed in its favor, just as a marshal may elect to take his actual traveling expenses instead of mileage where mileage is allowed to him."

An expression importing equality, in Pine River Logging Co. v. United States, 186 U. S. 279, 296, 22 S. Ct. 920, 46 L. Ed. 1164, would seem to be to the same effect. Had the two witnesses not been in the public service, the government could have recovered their mileage only from the Oregon line to Portland. And under the Sanborn decision as we construe it, being in the government service, their expenses are in lieu of the mileage which otherwise could be recovered.

Our conclusion is that for these two witnesses the government was entitled to recover only such expenses as they would necessarily have incurred for travel and maintenance within the district of Oregon.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.