**KEMART CORPORATION, a corporation, Appellant,**

v.

**PRINTING ARTS RESEARCH LABORATORIES, Inc., a corporation, Appellee.**

No. 14299.

United States Court of Appeals Ninth Circuit.

April 18, 1956.

Rehearing Denied May 25, 1956.

Henry Gifford Hardy, Carl Hoppe, San Francisco, Cal., for appellant.

Lyon & Lyon, Leonard S. Lyon, Richard F. Lyon, Frederick Lyon, Los Angeles, Cal., Julian F. Goux, Santa Barbara, Cal., for appellee.

Before STEPHENS, HEALY, and CHAMBERS, Circuit Judges.

STEPHENS, Circuit Judge.

The decision on the merits of the declaratory relief injunction case in suit as to infringement of patents was formalized in the district court's judgment which followed our mandate in accordance with our opinion and decision. Kemart Corp. v. Printing Arts Research Lab., Inc., 9 Cir., 1953, 201 F.2d 624. These two appeals are from the district court's judgment referred to and concern the proper assessment of costs, attorney fees claimed allowable to the plaintiff, and an issue of damages claimed by the plaintiff for libel or slander as to plaintiff's patents. In the opinion and the judgment which has become final, costs were allowed but notwithstanding attorney fees and damages were claimed by plaintiff, we made no mention of either in our opinion, decision, or mandate.

In the trial of the case, it was held by the district court that Kemart Corporation, the plaintiff, had infringed some of Printing Arts patents. Upon that conclusion it followed logically that neither costs, attorney fees nor damages could properly be allowed Kemart, the losing party, and of course were not allowed. The situation was changed radically when we reversed on the infringing issue, leaving the issues of attorney fees and damages untouched. We are of the opinion now that upon remand of the case specifically covering only the issue of infringement it was implicit that the other issues would have to have additional consideration by the district court, since its ruling on the patents controlled its decision as to the other issues.

We hold that the district court should now proceed to reconsider the other issues.

We do not rule that attorney fees and/or damages should or should not be allowed. Those questions and the proper allowance are questions for the trial court to answer.

The clerk assessed the costs and filed a written memorandum setting out his reasons for allowing or rejecting claimed items. The trial court made no comment as to the clerk's reasoning. Ordinarily, there is no appeal from a mere judgment of costs, but there is an exception where the power or right of the court to assess certain items of costs is in dispute, or there is a claim as to abuse of discretion. Newton v. Consolidated Gas Co., 1924, 265 U.S. 78, 44 S.Ct. 481, 68 L.Ed. 909; Williams v. Sawyer Bros., 2 Cir., 1931, 51 F.2d 1004, 81 A.L.R. 1527; Walker v. Lee, 9 Cir., 1934, 71 F.2d 622; United States v. Arizona Canning Co., 10 Cir., 1954, 212 F.2d 532;

Lyman v. Remington Rand, Inc., 2 Cir., 1951, 188 F.2d 306.

■ The allowance or disallowance of items of costs is determined by statute, rule, order, usage, and practice of the instant court. McWilliams Dredging Co. v. Department of Highways of Louisiana, 5 Cir., 1951, 187 F.2d 61; Williams v. Sawyer Bros., 2 Cir., 1931, 51 F.2d 1004, 81 A.L.R. 1527.

The first item for consideration relates to premiums or expenses paid to an individual for guaranty of supersedeas bond. In the trial of the main action, appellant here (plaintiff, Kemart Corporation, below) was held an infringer of a patent process and was ordered to desist from further licensing of the patent in dispute. Because the appellant's business was the licensing of such patents, the appellant filed a motion for supersedeas and stay of execution pending appeal. A hearing was held on the motion at which time appellee asked the court to require a $100,000 supersedeas bond and appellant Kemart asked that the bond be set at the lower figure of $5,000. The trial judge set the bond at $20,000, and a surety company bond could not be obtained unless appellant deposited $10,000 cash together with a personal note of its president for $10,000.

Appellant's bankers refused the loan of the required sum of $10,000 because appellant was without operating capital (the patents were the essence of appellant's business) and because the issue in the litigation had already been adversely decided against the appellant. Appellant was also unsuccessful in trying to borrow the money from others. Eventually a Mr. Charles Whitehead agreed to deposit the $10,000 with the surety company on the condition that appellant pay him $250 per month until the appeal was settled or the full sum had been repaid. If the appeal were adverse to appellant, Whitehead was to become a general creditor of appellant for the full $10,000, and payments were to stop. Some twenty-three months passed before the appeal was decided in appellant's favor, during

which time Whitehead had received $5,750 from Kemart on the Whitehead contract. The district court, in accordance with the clerk's memorandum, and we think correctly, declined to allow this charge as costs and appellant now contends this sum should have been taxed as costs to appellee pursuant to Local Rule 15(b) for the Southern District of California. Local Rule 15(b) provides:

> "The party entitled to recover costs shall ordinarily be allowed premiums paid on undertakings, bonds or security stipulations, where the same have been furnished by reason of express requirement of the law, or on order of the court or a judge thereof, or where the same is necessarily required to enable the party to secure some right accorded him in the action or proceeding."

Appellant argues that the amount paid to Whitehead was a "premium" under the ordinary definition of the word, as defined in Webster's New International Dictionary, to-wit:

> "Something offered or given for the loan of money; bonus; something synonymous with interest, but generally signifying a sum, or bonus, in addition to capital."

He further argues that the contract with Whitehead is either an undertaking or a security stipulation, and thus the payment is within local Rule 15(b).

The general subject of entering as costs the sums paid for surety, over and above the usual fee therefor, was discussed in The Europe, 9 Cir., 1911, 190 F. 475. In the cited case it was held by this court that the expense of obtaining a bond, as well as the regular premium paid to the bonding company, could be taxed as costs. This court stated in part, 190 F. at page 481:

> "It is a serious matter to detain a ship by judicial process in a cause not founded upon a just claim, although prosecuted in good faith and, therefore, lawful. The cost of the bond was high, but necessarily so. The Europe is a foreign ship, and

the amount of the bond was necessarily large because the libelant sued for a large amount. Forty-one thousand dollars was the exact amount of the security required. By competent evidence it was proved that the claimant was diligent in endeavoring to obtain a bond promptly and at a minimum of expense, and that the amount allowed, $1,269, was actually expended. In that sum there is included the premium paid to a bonding company and the expenses incurred in arranging with bankers in France and in New York to furnish the indemnity which the bonding company exacted. To these additional expenses objections are specifically urged. It is said that such expenses are unusual and unnecessary, * * *. Formerly, when security or bail was exacted, the litigant was obliged to importune his friends to become sureties, but, since the coming of corporations organized and capitalized to furnish security for compensation, it has become unnecessary for individuals to assume obligations for the accommodation of friends, and the instances are rare in which an individual can be prevailed upon to jeopardize his fortune by becoming a surety for a large amount. Hence the necessity of paying cash to obtain a bond to release a ship from legal custody. And payment of the premium is not the only burden which necessity imposes. Bonding corporations are not like insurance companies. They sell their credit only; they do not assume obligations without being fully indemnified. In this case the expense of providing indemnity was as necessary as payment of the premium. * * *" 190 F. 475, 481.

▅▅▅ There would then seem to be no question as to the trial court's power to assess as costs, money paid out for a bond over and above the bonding surety rate, but the allowance or rejection is subject to the court's sound discretion, and the trial court is not bound by the reasons given by the clerk for his ruling. An analysis of the Whitehead agreement [1] shows that the amounts to be paid

1. (R. p. 23) "Surety Bonds Agreement. This Agreement, made and entered into this 16th day of April, 1951, by and between Kemart Corporation, hereinafter referred to as "Kemart", and Charles N. Whitehead, hereinafter referred to as "Whitehead,"

"Witnesseth:

"That Whereas, Kemart is required to post a $20,000.00 supersedeas bond by reason of having received a judgment against it in Case No. 8909–WM in the District Court of the United States, in Los Angeles, California; and

"Whereas, Kemart is not in a position to furnish the collateral required by the Continental Casualty Company in view of the lack of working capital as reflected in the current balance sheet of Kemart; and

"Whereas, Whitehead is willing to furnish the necessary funds or marketable securities in order to make possible the issuance of a supersedeas bond by an established surety company; and

"Whereas, the parties desire at this time to agree upon compensation to be paid to Whitehead for making it possible for Kemart to obtain such supersedeas bond and to further agree upon the manner of making payment of such compensation;

"Now, Therefore, in consideration of the premises and of the mutual covenants of the parties, It Is Hereby Agreed As Follows:.

"1. Whitehead agrees to deposit as collateral a cashier's check payable to the Continental Casualty Company in the amount of $10,000.00 with said bonding company to induce it to furnish a supersedeas bond in the amount of $20,000.-00 to be filed in Case No. 8909-WM in the Federal District Court in Los Angeles, such bond being for the benefit of Printing Arts Research Laboratories, Inc., the defendant and cross-complainant in said case.

"2. As compensation to Whitehead for this financial accommodation and for the risks incurred, Kemart undertakes and agrees to pay to Whitehead a monthly sum of $250.00 on the first day of each month, commencing with May 1, 1951, and continuing until the return of his collateral to him in full. If the pending case should be lost on appeal and the judgment creditor should exhaust the col-

Whitehead were not ordinary expenses of obtaining a bond but were sums to be paid on a speculative money-making private contract. We do not base our ruling on Local Rule 8(b) [2] which provides for the approval of the court and endorsement by the opposed counsel as to sureties. We think Local Rule 8 covers only the bond and not the detail in the securing of the bond.

■ Concerning the witness fees paid officers of appellant corporation, the clerk of the district court refused to tax as costs the items of witness fees and mileage to witnesses Burt L. Berry and Frank P. Adams because "they are officers of the plaintiff corporation and it is presumed that the parties will be present without payment of witness fees." The district court agreed with the clerk as to these items of costs.

Appellant relies on Perlman v. Feldmann, D.C.Conn.1953, 116 F.Supp. 102, 115, wherein such costs were allowed by the court, stating:

"No recovery [in the action to which they were called as witness-

es] was sought from them individually; their interest was not shown to be other than the natural concern of an officer for the welfare of this corporation. The Clerk's ruling [allowing the fees] was amply supported by the cases which he cited, viz., The Petroleum No. 5, D.C., 41 F.2d 268; Tuck v. Olds, C.C., 29 F. 883; Fredericksen v. McDonald, 1 Cir., 223 F. 13. Though these were admiralty cases the principle involved is equally applicable to the situation here."

The appellee answers appellant on this point by arguing that this court is not concerned with what the custom or usage may be in other district courts, including the district court which rendered the opinion in Perlman v. Feldmann, supra. Appellee argues that it has long been the custom in the Southern District of California that witness fees and other disbursements to officers of a corporation that is a party to the action should not be included as taxable costs. Appellee, however, cites no authority to substantiate this position.

lateral, then, on that date, the monthly payments shall cease and Whitehead shall rank as a general creditor of Kemart for the repayment of the $10,000.00 in collateral.

"3. Kemart agrees that this financial accommodation furnished by Whitehead is to be regarded at all times, as an obligation of Kemart. In the event that any sum should be found due by Kemart to the defendant in the above entitled case and if then the surety company be called upon to make good upon its bond, then whatever sum is lost by Whitehead because of his cash deposited, or because of undertakings made, shall be an obligation of Kemart to Whitehead, and shall be due and payable upon demand.

"4. If, at any time after March 1, 1952, Kemart should become financially able to furnish the collateral required by the Continental Casualty Company without the aid of Whitehead or of any other person, so that Kemart alone can satisfy the requirements of the Continental Casualty Company, then, upon causing a release to Whitehead of his collateral, and releasing all guarantors, the obligations of Kemart to continue monthly payments of $250.00 shall cease.

"In Witness Whereof, the parties have executed this Surety Bond Agreement on the day and year first above written.
"Kemart Corporation
[Seal]   By /s/ Frank P. Adams
President.
/s/  Charles  N.  Whitehead"

**2. Rule 8. Sureties.**
"(a)  *  *  *
"(b) **Approval by Attorney:**
"Every recognizance, bond, stipulation or undertaking hereinafter presented to the clerk or a judge of the court for approval shall have appended thereto a certificate of an attorney of this court substantially in the following form:
"Examined and recommended for approval as provided in Rule 8.
————— Attorney
Such endorsement by an attorney will signify to the court that said attorney has carefully examined the said recognizance, bond, stipulation or undertaking, and that he knows the contents thereof; that he knows the purposes for which it is executed; and that in his opinion the same is in due form."

In Nead v. Millersburg Home Water Co., C.C.E.D.Pa.1897, 79 F. 129, 130, it was stated:

"The practice of the state courts * * * is to allow and tax as costs the witness fees and mileage for the officers of corporations, where, as here, they attend as witnesses, and not as representatives of the corporation, I find no authority showing any settled practice upon this point in the federal courts of this district, but am of opinion that the defendant's exceptions must be sustained [i. e. the costs allowed]."

We feel that the reasoning used in the Perlman case, supra, is sound and therefore hold that the court had the power and the duty to assess such items as proper costs.

█ The clerk of the district court, in assessing costs, disallowed claim for fees for exemplification and copies used in lieu of originals by stipulation of counsel, because "this item was not necessarily incurred but was permitted for convenience of the party who should pay the costs of same". And the trial court ruled as indicated by the clerk. This ruling was discretionary in character, and will stand.

█ The clerk taxed as costs the mileage of one of appellant's witnesses, but limited the amount to 100 miles each way because the witness came from San Francisco which is outside the district. Appellant argues here that the entire mileage from San Francisco to Los Angeles should have been allowed, and if not, then the mileage from the northern boundary of the southern district to Los Angeles should have been allowed.

The United States Code Ann., Title 28, § 1821 [3] recites:

"A witness attending in any court of the United States * * * shall receive * * * 7 cents per mile for going from and returning to his place of residence."

The statute does not itself limit the mileage. The limitations have been imposed by custom of the courts.

In Kirby v. United States, 9 Cir., 1921, 273 F. 391, this court held that mileage is taxable in the federal court only for the distance that could be *reached* by a subpoena and that under the federal rules a subpoena is good any place within the district and is valid if served without the district if within 100 miles of place of trial.

In Pacific S. S. Co. v. Sutton, 9 Cir., 1925, 7 F.2d 579, this court approved the rule of the United States District Court for the Western District of Washington which provided that where a witness attended from a point without the district [from the southern line of the State of Washington to Seattle, Washington] his mileage would be taxed according to the distance actually and necessarily traveled by him within the limits of the district. The court there cited the case of Kirby v. United States, supra, and said the rule it was setting out did not conflict with the construction of the statute as previously stated in the Kirby case. In the Pacific S. S. Co. case the allowable mileage was greater than 100 miles, calculated upon mileage traveled within the district, even though the witness was from outside the district.

In Ladd & Tilton Bank v. United States, 9 Cir., 1929, 30 F.2d 334, this court held that the government could tax as costs the mileage traveled by two witnesses *within* the district of Oregon. The trial was in Portland, Oregon, and the witnesses were from Virginia and Washington, D. C. There was no limit of 100 miles applied in this case, but rather a limit as to mileage actually traveled *within* the district. Again, Kirby v. United States, supra, was cited.

In The Wahkeena, D.C.W.D.Wash.S.D. 1931, 51 F.2d 106, in a suit in admiralty, the district court allowed mileage from Tacoma, Washington, to the boundary of the district in the ordinary route of

3. June 25, 1948, c. 646, 62 Stat. 950, amended May 10, 1949, c. 96, 63 Stat. 65; May 24, 1949, c. 139, § 94, 63 Stat. 103.

travel between Weiser, Idaho, and Tacoma, Washington. This distance was more than 100 miles.

More recent cases since the new Federal Rules have attempted to clarify the questions of allowable mileage for witnesses. However, the results have not always been as certain and definite as could be desired.

Spiritwood Grain Co. v. Northern Pacific Ry. Co., 8 Cir., 1950, 179 F.2d 338, 344, makes the rather broad statement:

"Of course, if the witness attends from out of the district, mileage can be taxed only to the extent of 100 miles",

citing two old cases, The Vernon, D.C. Mich., 36 F. 113, and Street v. The Progresso, D.C.Pa., 48 F. 239. An examination of these two cases does not serve as a basis for such a sweeping statement. These two cases were also prior to the qualifications developed in the ninth circuit cases already cited. The facts in the Spiritwood Grain Co. case were not the same as we have before us, and therefore that case is not determinative here.

Appellee cites Friedman v. Washburn Co., 7 Cir., 1946, 155 F.2d 959, 963, in which the court stated:

"We assume that his objection is to the allowance of mileage and time for travel over one hundred miles. In this we think the court was in error. R.S. § 876, 28 U.S.C.A. § 654, provides that subpoenas for witnesses will not run a greater distance than 100 miles, and it has been practically universally held that mileage to witnesses is taxable to the full extent of the distance they can be legally reached by subpoena, but not more than 100 miles. See Vincennes Steel Corp. v. Miller, 5 Cir., 94 F.2d 347; Kirby v. United States, 9 Cir., 273 F. 391  *  *  *."

It would seem that the court, in the Friedman case, supra, was in error in making such a sweeping statement. R.S. § 876, Title 28 U.S.C.A. § 654,[4] limited the effective range to 100 miles if a subpoena was served *out* of the district. There was no limit on the range of the subpoena if served *within* the district. The court in the Friedman case probably was misled by similar language used in the Vincennes Steel Corp. v. Miller case, 5 Cir., 94 F.2d 347, supra. The Kirby case, which was also cited by the court, is not in accord with such a broad statement.

Under the new Federal Rules, Rule 45 (e) (1)[5] a subpoena can be served anywhere within the district, *or* without the district if within 100 miles of the place of trial.[6]

4. Section 654 was repealed in 1948, superseded by Rule 45(e) (1) of Federal Rules of Civil Procedure, Title 28 U.S.C.A.

5. In note to Subdivision (e), Rule 45, Title 28 U.S.C.A., it is stated: "The first paragraph continues the substance of U.S.C.A., Title 28, former § 654  *  *  *. Compare U.S.C.A. Title 11, § 69 (Referees in bankruptcy; contempts before) (production of books and writings) which is not affected by this rule. For example of statutes which allow the court, upon proper application and cause shown, to authorize the clerk of the court to issue a subpoena for a witness who lives in another district and at a greater distance than 100 miles from the place of the hearing or trial, see:
"U.S.C.A., Title 15: § 23 (Suits by United States; subpoenas for witnesses) (under anti-trust laws).

"U.S.C.A., Title 38: § 445 (Actions on claims; jurisdiction; parties; procedure; limitation; witnesses; definitions) (Veterans' insurance contracts).
"The second paragraph continues the present procedure applicable to certain witnesses who are in foreign countries.  *  *  *"

6. Subdivision (e) (1) of Rule 45, Federal Rules of Civil Procedure, Title 28 U.S.C.A., reads as follows:
"(1) At the request of any party subpoenas for attendance at a hearing or trial shall be issued by the clerk of the district court for the district in which the hearing or trial is held. A subpoena requiring the attendance of a witness at a hearing or trial may be served at any place within the district, or at any place without the district that is within 100 miles of the place of the hearing or trial

Perhaps the most recent case involving the question in which an adequate discussion was presented is that of Barnhart v. Jones, D.C.S.D.W.Va., Beckley D., 1949, 9 F.R.D. 423, decided after the effective date of the New Judicial Code, which is in accord with the view we adhere to. We quote from that case in the margin.[7]

It would seem that in the case of a witness from without the district, mileage allowable should be that which was traveled *within* the district, *or* actual mileage traveled in and out of the district up to 100 miles, whichever is the greater. Under this limitation, the costs of trial would still be contained, and there would not be any arbitrary discrimination based on the mere fact that the witness happened to be from without the district. The mileage of a witness from within the district would still be the actual mileage traveled. The cases previously cited of Pacific S. S. Co. v. Sutton, 9 Cir., 1925, 7 F.2d 579, and Ladd & Tilton Bank v. United States, 9 Cir., 1929, 30 F.2d 334, cases decided by this court, are squarely in accord with this result. Those cases illustrate that the trial court had the power to tax the mileage traveled within the district, even if the witness came from without.

It should be noted that it is not necessary to actually have had the witness subpoenaed in order to collect mileage for such witness. As was said in Friedman v. Washburn Co., 7 Cir., 1946, 155 F.2d 959, at page 963, supra:

specified in the subpoena; and, when a statute of the United States provides therefor, the court upon proper application and cause shown may authorize the service of a subpoena at any other place."

7. Barnhart v. Jones, D.C.S.D.W.Va., Beckley D., 1949, 9 F.R.D. 423, 424:

"The objections are based upon three main grounds: First, that mileage for the witness from New York and those from Pittsburgh should be limited to a distance of 100 miles from the place of trial * * *.

"Plaintiffs' answers are accompanied by affidavits which repeat that attendance of all these witnesses was necessary, and the affidavits assert that no provision of the New Judicial Code or Federal Rules of Civil Procedure restricts mileage to 100 miles; but to the contrary, that 28 U.S.C.A. § 1821, allows a witness attending any court of the United States (without restriction as to distance) mileage going from and returning to his place of residence.

"As to mileage for witnesses, it is true that no statute or rule expressly limits mileage to 100 miles; but I am of opinion that such limitation is implicit in rule 45(e) (1), of the Federal Rules of Civil Procedure, 28 U.S.C.A. This rule provides that a witness subpoena may be served at any place within the district, or at any place without the district that is *within 100 miles* of the place of trial specified in the subpoena. The advisory committee notes to subdivision (e), paragraph (1), are to the effect that this paragraph continues the substance of 28 U.S.C.A. § 654. [See our footnote 5, supra.] Section 654 was repealed in 1948 as having been superseded by rule 45(e) (1). [See our footnote 4, supra.] Since the language of the rule and Section 654 are substantially the same, and since the rule was adopted to continue the substance of the statute, the law is not changed by these statutory maneuvers, but remains as it was prior to adoption of the rule and repeal of Section 654, and we must look to the intention of Congress in enacting Section 654, in order to properly interpret rule 45(e) (1). The effect of a subpoena served outside the district is limited to 100 miles from the place of trial, and it seems only reasonable to infer that Congress must have intended to limit the taxation of mileage to the same distance. If a court in a country as vast as ours permitted taxation of the entire mileage of witnesses without limitation as to distance, an unbearable burden would be imposed upon the conduct of litigation. Such a course might in some cases lead to a result whereby costs would be greater than the amount of the recovery.

"Economy in litigation is an essential element of justice. Taxation of unlimited mileage allowances is in derogation of this principle, and cannot be permitted.

"I therefore hold that the mileage taxable as costs for witnesses outside the district is limited to 100 miles from the place of trial. This conclusion is sustained by the weight both of reason and of authority. [Cites cases.]"

"* * * [M]ileage to witnesses is taxable to the full extent of the distance they can be legally reached by subpoena, but not more than 100 miles."

Thus, it should follow that the mileage allowable to a witness brought from outside the district should correspond to the distance from the place of trial to which the witness would have been amenable to service of the subpoena (i. e., any place within the district or 100 miles from the place of trial, whichever is larger).

In the case before us, the witness would not have been amenable to service of the subpoena in San Francisco, as he was out of the district and more than 100 miles from the place of trial (Los Angeles). He would only have been subject to process when he entered the district, which would have put him still some 250 miles from the place of trial. It would thus seem reasonable and we hold that since he was amenable to process at this point, that he should be able to recover his mileage therefrom.

Another item in dispute was that covering expenses of carbon copies of the transcripts of trial. It appears that two carbon copies of the daily transcript were made and that the court allowed as an item of costs, one only. We hold with the trial court upon this discretionary ruling. See Walker v. Lee, 9 Cir., 1934, 71 F.2d 622, 624; Perlman v. Feldmann, D.C.Conn.1953, 116 F. Supp. 102; Title 28 U.S.C.A. § 1291,[8] note 249, p. 371, as to power and discretion of court, including abuse of discretion. See Title 28 U.S.C.A. § 1920.[9]

The case is remanded for further proceedings as to costs in accord with this opinion, and to consider and adjudge the issue of attorney fees and damages, as to the court shall seem meet and proper.

Affirmed in part, reversed in part, and Remanded.

8. June 25, 1948, c. 646, 62 Stat. 929.

9. June 25, 1948, c. 646, 62 Stat. 955.