ALLEN, Chief Judge.
This matter comes before this court by a motion of the appellant to review the costs allowed in the lower court subsequent to the taking of an appeal in which this court reversed the lower court, 107 So.2d 156.
William H. West secured a judgment against William H. Melvin for $290,000, which judgment was reversed by this court. The circuit judge, on Melvin’s motion to dismiss the suit and to tax costs in favor of said defendant, entered an order allowing the following costs:
Transcript of trial proceedings by Court Reporter $488.75
Clerk’s fee for preparation of record on appeal 31.55
Filing fee for appeal, District Court of Appeal 25.00
Original of deposition of William H. West 31.00
Reasonable premium for super-sedeas bond 2,062.50
Total- $2,638.80
The court disallowed certain other costs claimed by Melvin, which is the subject matter of the motion now before this court. Melvin, after the jury’s verdict of $290,000 against him, sought to supersede the judgment in the appeal to this court. The su-persedeas bond in the sum of $350,000 was ordered by the court below. Melvin paid a premium of $7,000 to obtain this bond, plus additional costs of $359.25 for recording fee and intangible tax and the sum of $1,-159.25 for recording the mortgage, state stamps and intangible tax on certain property owned by Melvin which the surety company demanded as collateral before the company would write the supersedeas bond.
The lower court refused to allow the full $7,000 premium but did allow the sum of $2,062.50 as a reasonable premium for a supersedeas bond.
A witness testified before the circuit judge at the hearing on the supersedeas matter that if the bond given for the super-sedeas was fully collateralized (a collater-alized bond usually being defined in the surety manuals as a bond that is secured by money, government securities, or other type of securities that can be immediately converted into cash) that the premium rate should have been $2,062.50, the amount taxed by the lower court. However, if the supersedeas bond was not fully collater-alized the proper premium should have been $7,000, which is the amount that was actually paid by the appellant.
There was vigorous opposition on the part of the appellee to the supersedeas bond issued in. this case. One question involved the authority of the agent to issue the full amount required to-wit: $350,000. The agent of the company, however, stated that he had authority to issue this sum if they secured reinsurance. The defendant offered a mortgage on its land which was refused by the plaintiff due to the confused state of the title plus the obscureness of whether the mortgage was a first mortgage or otherwise. Upon the mortgage being refused, one of defendant’s counsel, Mr. Randolph, proposed to put up 53,180 shares of General Telephone Company stock, valued at that time in excess of $2,000,000, which he held as trustee for certain unnamed parties. The plaintiff objected to this but the court examined the trust indenture and then permitted the stock to be filed in the registry of the court. It should be noted that this collateral was not placed with the bonding company and thus it did not fulfill the requirements for a fully col-lateralized bond. Apparently there must have been an agreement that when the title to defendant’s realty was made insurable, the mortgage would be filed as security with the company and the stock would be withdrawn. Actually, the title was subse *235 quently cleared and a title insurance policy was issued in the amount of $3,500,000 in October, 1957. A first mortgage was executed then to the surety company and the> mortgage was recorded. It was at this time that the recording costs of $359.25', plus $1,159.25 for intangible taxes and stamps on the mortgage were incurred. In, the meantime, the agent had issued a Pan American surety bond in the principal amount of $350,000 and a premium of $7,000 was paid by the defendant. This premium was the premium rate for a bond not fully collateralized.
Section 58.08, Florida Statutes, F.S.A., provides:
“If costs shall be awarded to either or any party in any civil cause at common law or in equity in any court of the State of Florida, then the reasonable premiums or expenses paid on all bonds or stipulations, or other security furnished in the said cause by the prevailing party in whose favor such costs are allowed, may in the discretion of the judge of the court be taxed and allowed as a part of the costs of the case.”
There is no question but what premiums or the expenses paid in securing su-persedeas bonds, etc., may be taxed as costs upon reversal of a judgment in favor of a plaintiff. See Mercantile Investment & Holding Company v. Gilliland, 1941, 148 Fla. 260, 4 So.2d 118; Kemart Corp. v. Printing Arts Research Laboratories, Inc., 9 Cir., 232 F.2d 897, 57 A.L.R.2d 1234, and The Europe, 9 Cir., 1911, 190 F. 475.
 The appellant on a money judgment is entitled to have the judgment superseded upon giving a bond in a reasonable sum to secure the money judgment involved in the case, otherwise the plaintiff in the trial court could levy on all the property of the defendant in satisfaction of a judgment. The court takes judicial notice of the fact that the surety companies who write most of the supersedeas bonds require security to be given to them to protect themselves in the event of the inability of' the judgment debtor to pay the sum due in: the event the judgment is affirmed in a superior court. There are not too many people who could put up sufficient securit’''^ to get a fully collateralized supersedeas bond in the sum of $350,000. The charges for securing such a bond are fairly standardized and practices of the various surety companies usually require in a case such as the one before this court that the judgment debtor would have to put up either or both cash, government guaranteed securities, cashier’s checks, or in the case of many companies, A-l stock and bonds traded in the New York Exchange. These types of securities must be of the kind that the surety company could immediately convert the collateral into cash and pay off the judgment creditor.
A real estate mortgage, although it might secure the surety company, is not the type of collateral that could be readily converted into cash. The securities given to the surety company in this case did not meet' the test for a fully collateralized bond and,, therefore, it was necessary for the appel-'. lant to pay the-sum of $7,000 to secure the. ' supersedeas bond from the Pan American, which he did.
We would hold, under the facts in this case, that the appellant should have been allowed the sum of $7,000, what he’ actually paid to secure the bond in question, insteacl of the sum of $2,062.50 allowed by’ thé lower court which said sum, as herein-before mentioned, was the premium allowable for a fully collateralized bond. We' also are of the opinion that the court should allow Melvin the expenses which he had to pay to give a mortgage to the surety company, such items being heretofore mentioned of $359.25 for recording fee and intangible tax and $1,159.25 for recording of the mortgage, state stamps and intangible tax on the Melvin property.
*236 We must reverse the order of the trial judge entered on the 17th of March, 1960, of taxing costs for a new order not inconsistent with this opinion.
KANNER'and SHANNON, JJ., concur.