### DAVIS et al. v. SMITH et al.

#### (District Court, D. Massachusetts. April 3, 1912.)

#### No. 563.

ADMIRALTY (§ 124*)—COSTS—MILEAGE OF WITNESSES.

    Under the rule in the First circuit that mileage may be taxed for a witness in admiralty suits beyond a point where he could be reached by a subpœna, the taxation of mileage for travel one way by a witness from the Cape de Verde Islands affirmed, where it was shown that his home was there, that he actually traveled from there to the trial, and that he was a material witness.

    [Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 836–857; Dec. Dig. § 124.*]

In Admiralty. Suit by Cornelius A. Davis and others, owners of the schooner Gov. Ames, against the schooner Lejok; Charles L. Smith, claimant. On appeal from clerk's taxation of costs. Affirmed.

Benjamin Thompson, of Portland, Me., for libelants.

Blodgett, Jones & Burnham, of Boston, Mass., for respondents.

DODGE, District Judge. This case, with No. 562, Smith v. Davis, claimant, relating to the same collision, has been before the Court of Appeals, is covered by the opinion of that court (187 Fed. 40, 109 C. C. A. 94), and is now here under its mandate. The direction given regarding this case is that the decree in favor of Davis et al. for damages and costs be modified "by a revision, to be made by the District Court, of the taxation of costs for travel of witnesses on behalf of the Gov. Ames." Except as thus modified, the decree is affirmed, with interest.

In revising the taxation as directed, the clerk has heard certain further evidence, and in view of it, in connection with whatever else appears regarding the matter in the record, has reaffirmed his former taxation, so far as it deals with the travel of the witnesses in question.

Smith et al. contend that the taxation now made does not comply with the mandate.

As to the amount taxable for travel of the witness Lima, being the item principally in question, the clerk puts it at $369.10, which is 5 cents per mile for 7,382 miles, the distance from Cape de Verde Islands to Boston. This was originally based on a certificate in the usual form, sworn to by Davis, that the witnesses therein named, including Lima, had traveled from the places set against their respective names as witnesses in the case.

The Court of Appeals observed in its opinion that the amount allowed was evidently far in excess of the probable cost to Lima of making the voyage, and while not intimating that travel may not be allowed beyond a point where the witness might have been reached by subpœna, according to the usual rule followed in this circuit, declared that this must be done, if at all, as the result of proofs which strictly accord with law. 187 Fed. 50, 109 C. C. A. 94.

I do not understand from the opinion that I am necessarily required to disallow the amounts which have been taxed, either in whole or in part. On the contrary, the opinion leaves the revision to this court, "without being controlled by any further suggestions" from the Court of Appeals. Nor do I understand that the opinion overrules anything in U. S. v. Sanborn (C. C.) 28 Fed. 299, 303, 304, or in The City of Augusta, 80 Fed. 297, 303, 304, 25 C. C. A. 430, to which it refers, or requires anything more in the way of proofs strictly in accordance with law than is required to support the taxation upon the principles recognized in this circuit ever since U. S. v. Sanborn, above cited.

That Lima was lookout on board the Gov. Ames appears from the record. It is not, and could hardly be, suggested, in view of this fact, that his attendance at the trial as a witness for that vessel was unnecessary or unreasonable. It further appears from the record that, when the taxation of his travel fees was first made, there was no specific objection on the ground that Lima had not traveled from his "residence," or had traveled an unreasonable distance. The objection was only to the taxation of more than 100 miles for any one witness. Had there been objection on any of the grounds which the Court of Appeals has since suggested, it would, of course, have been dealt with at the time.

The taxation of the travel fees was made on a certificate, found in the record, which the court rejects because it gives the "place from which each came to attend the trial," instead of his "place of residence," as in Rev. St. § 848 (U. S. Comp. St. 1901, p. 655). Without inquiring whether or not, if this objection had been raised at the time, the certificate might have been so amended as to avoid any ambiguity, I proceed to inquire what the record shows about Lima, his residence, and his travel to the place of trial, independently of the certificate.

His testimony in the record shows him to have been a Portuguese sailor, born in the Cape de Verde Islands, and it shows, also, that his English was imperfect. It is true that to an early question, "Where do you live?" he answered, "New Bedford." But he also testified

that, having spent six months on board another schooner, he went to the Cape de Verde, in the September following the collision, to see his people; that he did not intend to return here so soon, when he returned here to testify, though he did intend to come back at some time; and that he intended after the trial to get back as soon as he could. Asked if he intended to go back to live, to stay, he said he did, and that he might come back here again or not. He further said that in coming to Boston for the trial he went to St. Vincent, thence to Bremen, thence to New York, and that there was no other way in which he could have come at the time.

For the purposes of the present revision, the evidence was introduced before the clerk of a Portuguese resident of Boston, who knew Lima and with whom he stopped whenever in this city. According to this evidence, Lima's parents live in Brava, Cape de Verde, he is married, his wife is there, that is his home, he sails from Boston, New Bedford, Providence, or New York, wherever he gets a chance, and the same is true of the other Cape de Verde witnesses in this case. Every three years they go home, and stay the fall, and come back.

It seems to me that I am not required, in view of all the evidence, to conclude, from the fact that when Lima answered "New Bedford" to the question where he "lived," his residence was there within the meaning of section 848, Rev. Stats. The evidence seems to me to warrant the finding that the witness really resided in the Cape de Verde Islands, and came from there, in good faith, to testify. If so, I think the mileage allowed him conforms to legal proofs. Travel only one way has been in fact taxed.

As to the other Portuguese witnesses, if their real residence is to be inquired into, I think it would appear to be the same as Lima's; but they claim only to have come from their temporary residences in this country to the trial, and I do not understand that there is any real controversy regarding the amounts taxed for their travel. Under the directions given in the mandate, I do not see that any inquiry into the actual cost of journeys made by the witnesses, or the amounts of money which have been paid them, are relevant.

The clerk's taxation is therefore affirmed.