**BANK OF AMERICA, National Trust & Savings Association, Enterprise Productions, Inc. and Sunset Securities Company, Plaintiffs,**

v.

**LOEW'S INTERNATIONAL CORPORATION, Defendant.**

United States District Court
S. D. New York.
June 25, 1958.

See also 19 F.R.D. 115.

Schwartz & Frohlich, New York City, for plaintiffs. Myles J. Lane, David H. Horowitz, New York City, of counsel.

Phillips, Nizer, Benjamin & Krim, New York City, for defendant. Louis Nizer, Paul Martinson and Albert F. Smith, New York City, of counsel.

DAWSON, District Judge.

These two motions, brought on by the plaintiffs and the defendant, respectively, pursuant to Rule 54(d), to review the action of the Clerk of the Court in taxing costs in the above-entitled action, raise

issues as to whether the expense of the Court Reporter's stenographic transcript of the proceedings is properly taxable as costs, and whether the transportation expenses of witnesses from a foreign country are properly taxable as costs.

The action was one for breach of contract for the distribution and marketing of certain films by the defendant corporation. Originally there were thirteen causes of action in the complaint. As a result of a pre-trial hearing and a pre-trial order, six of the causes of action were dropped and it was determined that only one cause of action (the Thirteenth Cause of Action) should be tried by the court and jury and that following the trial of that cause of action the remaining causes of action should be tried by the court without a jury. The trial of the Thirteenth Cause of Action has been had. It lasted for approximately one month. The principal issue in this trial was whether the defendant devoted its best efforts to the proper marketing and disposition of the motion pictures in Great Britain (referred to throughout the trial as the "Enterprise" films) and made such marketing as complete and efficient as practicable, so that the gross returns from such marketing would be as large as possible. The jury rendered a verdict for the defendant which was duly entered. Thereupon the parties taxed costs and these motions raise the issue as to whether the Clerk's taxation of costs in certain respects was proper.

(1) Stenographic Transcript of the Trial Proceedings

■ Defendant contends that the stenographic transcript of the trial proceedings was necessary in this action, particularly in light of the great length of the trial and the complexity of the data presented, and of the usefulness of such transcript for the purposes of cross-examination and rebuttal of witnesses, of making motions to strike and to dismiss, and for use in preparing instructions for the jury and preparing summations. Plaintiffs deny that the transcript was necessary and urge that the issue in-

volved in the case was a simple one and that the procurement of a transcript was merely for the convenience of the defendant and that counsel's hand-written notes would have been sufficient to accomplish the above-enumerated purposes. Plaintiffs point out that the transcript was not procured at the request of the Court. However, a copy of the transcript was provided to the Court and the Court found that transcript useful and even necessary in passing upon motions and in preparing the charge to the jury.

Rule 54(d) of the Rules of Civil Procedure, 28 U.S.C.A. provides:

"Costs. Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs. * * * *"

Under this rule the courts have been held to have wide discretion in the fixing of costs. Truth Seeker Co. v. Durning, 2 Cir., 1945, 147 F.2d 54; Harris v. Twentieth Century-Fox Film Corp., 2 Cir., 1943, 139 F.2d 571; United States v. Arizona Canning Co., 10 Cir., 1954, 212 F.2d 532; 6 Moore, Federal Practice, Par. 54.70 [5].

■ Title 28 U.S.C.A. § 1920 provides for the taxation of costs for stenographic transcripts. That statute provides:

"§ 1920. Taxation of costs.

"A judge or clerk of any court of the United States may tax as costs the following:

* * * * * *

"(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case."

The courts have held under this section that it is within their discretion to determine whether or not the stenographic transcript is "necessarily obtained for use in the case," and this appears to be the reasonable meaning and intent of the language of the statute. See Perlman v. Feldmann, D.C.D.Conn.1953, 116 F.Supp. 102, reversed on other grounds

219 F.2d 173, 50 A.L.R.2d 1134, certiorari denied 1954, 349 U.S. 952, 75 S.Ct. 880, 99 L.Ed. 1277; Kemart Corp. v. Printing Arts Research Lab., 9 Cir., 1956, 232 F.2d 897; Cooke v. Universal Pictures Co., D.C.S.D.N.Y.1955, 135 F.Supp. 480; 6 Moore, Federal Practice, Par. 54.77 [7]. But cf. Marshall v. Southern Pac. Co., D.C.N.D.Cal.1953, 14 F.R.D. 228.[1] Among the more important factors to be considered are the length and the complexity of the trial and the need of the court and the parties to have a transcript to which they may refer. Cf. Cooke v. Universal Pictures Co., supra; Kowalewski v. Pennsylvania R. Co., D.C. D.Del.1957, 21 F.R.D. 244, with Perlman v. Feldmann, supra; Manley v. Canterbury Corp., D.C.D.Del.1955, 17 F.R.D. 234; Brookside Theatre Corp. v. Twentieth Century-Fox Film Corp., D.C.W.D. Mo.1951, 11 F.R.D. 259, affirmed 194 F.2d 846, certiorari denied 1952, 343 U.S. 942, 72 S.Ct. 1035, 96 L.Ed. 1348. See, also, Kemart Corp. v. Printing Arts Research Lab., 9 Cir., 1956, 232 F.2d 897, 905, 57 A.L.R.2d 1234; Knickerbocker Plastic Co. v. Allied Molding Corp., D.C. S.D.N.Y.1949, 96 F.Supp. 358; Hillside Amusement Co. v. Warner Bros. Pictures Distributing Co., Civ. 50–183 (S.D. N.Y.1954).

█ The Court believes that in this case it should exercise its discretion to allow the costs of the copies of the transcript furnished to the defendant and to the Court. The trial of this case lasted a period of over four weeks; the trial was complex and the evidence included much testimony as to figures and statistical data, and complicated analyses and interpretations of charts. Witnesses on both sides were frequently questioned regarding testimony previously given by them on matters of specialized and detailed nature—such as the significance of the receipts of a picture in selected theatres or selected areas, as to whether or not release dates had been shifted, and what they actually were. It was very helpful to the Court to have a copy of the daily transcript to be able to review the issues and the testimony and to assist it in preparing its charge to the jury. The Court believes that in a case of this length, complexity and importance the availability of a copy of the transcript to the Court and to the parties was more than a matter of mere convenience, but was a matter of substantial necessity. The availability of the transcript to the parties and to the Court minimized the possibility of much time-wasting disagreement as to what prior witnesses may have said, and the daily transcript was of substantial use to the parties and to the Court and was necessarily obtained for such use. This is not the brief and simple type of case in which the Court

1. The case of Stallo v. Wagner, 2 Cir., 1917, 245 F. 636, does not appear to prevent the award of costs for the copies of transcripts in this case. See Perlman v. Feldmann, supra, 116 F.Supp. at pages 107–109. The Stallo case was decided under § 983 of the Revised Statutes which allowed costs for "papers necessarily obtained for use on trials in cases," and the court read that section along with the existing Equity Rule 50 which provided only that the court may appoint a stenographer to take down testimony in shorthand and that his fee shall be taxed as costs. The case was an equity case which lasted one week, and the court held that a party who obtained a copy of the stenographer's minutes for his own use and convenience on the trial was not entitled to have the amount paid the stenographer taxed under Equity Rule 50. The court held that "a copy of the stenographer's minutes of the trial furnished to one of the parties is not a copy of a paper necessarily obtained for use on the trial within the meaning of section 983 of the Revised Statutes." Id., 245 F. at page 641. It further appears that stenographer's fees were not taxable at all in law actions at that time as not being "costs of suit." Straus v. Victor Talking Machine Co., 2 Cir., 1924, 297 F. 791, 806. This Court concurs in the view of Judge Hincks in Perlman v. Feldmann, supra, 116 F.Supp. at pages 107–109, and of Professor Moore and the cases above cited and following, that the Stallo v. Wagner case does not limit this Court's discretion in determining costs under § 1920 of Title 28 U.S.C.A., with consideration of the different language of the section, its statutory history and what seems the fair meaning and intent of its costs provision.

and the parties might easily rely upon their memories and upon the notes taken by them during the course of the trial.

Therefore, the Court will allow the costs of the two copies of the transcript which were provided to the Court and to the defendant. However, the Court does not believe that the transcript of the openings and closings to the jury, or of oral argument made on motions to dismiss in the course of the case, were necessarily obtained for use in the case. Resultantly the Court orders that the costs of the transcripts be retaxed to include the costs of the trial transcript with the exception of these pages.

(2) The Expenses of Travel of Defendant's Three English Witnesses

■ Defendant produced, as witnesses on its behalf at the trial, three residents of Great Britain. These three witnesses were pre-eminently qualified to testify concerning the issues of the case. One witness was David Goodlatte, who was the head of the largest circuit exhibiting motion pictures in the British Isles, and the others were Cecil Maitland and Douglas King, who are executives of M. G. M. Pictures, a subsidiary company of Loew's International in the United Kingdom. King is general sales manager for M. G. M. in Great Britain and had been assistant sales manager during the time of the distribution of Enterprise Films. Maitland is treasurer and director of M. G. M. and is also secretary and director of the New Empire Ltd., which is the Loew's subsidiary that operates the Empire Theatre in London. Maitland additionally is an accountant and had prepared figures and statistics on the distribution of Enterprise and other films in Great Britain. Both of these men had personal knowledge of the facts relating to the distribution of Enterprise Films. Their testimony bore on the essential issue of the case. It was the type of testimony that was necessary if all the facts were to be presented to the jury.

Defendant sought an allowance of costs of $783 for each such witness, being the lowest first-class rate for transporting each of these witnesses from and to England. The Clerk of the Court reduced the allowance of costs in each case to $16 which he computed by granting a traveling allowance for 100 miles each way at the rate of 8¢ per mile.

The statutory provision for allowance of costs provides that there may be taxed as costs

" * * * fees and disbursements for * * * witnesses." 28 U.S.C. A. § 1920(3).

The fees to which a witness is entitled are set forth in § 1821 of Title 28 U.S. C.A. This section provides for a fee of $4 per day and an allowance of 8¢ per mile for going from and returning to his place of residence, with the additional proviso:

"Provided, That in lieu of the mileage allowance provided for herein, witnesses who are required to travel between the Territories, possessions, or to and from the continental United States, shall be entitled to the actual expenses of travel at the lowest first-class rate available at the time of reservation for passage, by means of transportation employed."

Professor Moore points out:

"The prevailing view is that the liability of a party to his witness for their legal fees and allowances is sufficient to allow him to tax those amounts as costs, if otherwise entitled to do so, although he has not actually paid those expenses. Nor is it always necessary for witnesses to be under subpoena or that they testify for their fees and allowances to be taxed as costs." 6 Moore, Federal Practice, p. 1364.

■ Of course, the mileage and travel allowance for witnesses is based upon the premise that the testimony of the witness must be relevant and material to the issue in the case and appear to be reasonably necessary to its disposition. In the present situation the Court finds that the testimony of the three witnesses from England was relevant and material

and was reasonably necessary to the disposition of the issue of the action.

Despite the clear provisions of the statute, many of the courts have limited the statutory provision by stating that transportation expenses of witnesses may not exceed the allowance of more than 100 miles, or a further distance within the District itself, each way, from the place of trial. Vincennes Steel Corp. v. Miller, 5 Cir., 1938, 94 F.2d 347; Friedman v. Washburn Co., 7 Cir., 1946, 155 F.2d 959; Kemart Corp. v. Printing Arts Research Lab., 9 Cir., 1956, 232 F.2d 897, 902–905, 57 A.L.R.2d 1234; Ryan v. Arabian Oil Co., D.C.S.D.N.Y. 1955, 18 F.R.D. 206; Perlman v. Feldmann, D.C.D.Conn.1953, 116 F.Supp. 102. 115, reversed on other grounds 219 F.2d 173, certiorari denied 1954, 349 U.S. 952, 75 S.Ct. 880, 99 L.Ed. 1277; Barnhart v. Jones, D.C.S.D.W.Va.1949, 9 F.R.D. 423; 6 Moore, Federal Practice, Par. 54.77 [5]. This limitation upon what seems to be a clear statutory provision seems to be predicated upon the fact that a witness may be subpoenaed only within the District, or within a radius of 100 miles from the place of trial, and that this limitation limits the distance for which any witness may properly require his transportation expenses to be paid. Such limitation has been frequently applied to taxation of costs, but seems to have no basis in either the statute or in the realities of modern trials.[2] It is well established that transportation expenses of witnesses will be taxed as costs, even though a witness has not been subpoenaed. Spiritwood Grain Co. v. Northern Pac. Ry. Co., 8 Cir., 1950, 179 F.2d 338; Vincennes Steel Corp. v. Miller, supra, 94 F.2d at page 350; Hansen v. Bradley, D.C.Md.1953, 114 F.Supp. 382; Gallagher v. Union Pac. R. Co., D.C.S.D.

N.Y.1947, 7 F.R.D. 208; 20 C.J.S. Costs § 228. Therefore, the question as to whether a witness has traveled a distance greater than the distance for which he may be subpoenaed seems to be irrelevant as to determination of the issue. The real issue is whether his testimony was necessary.

It has been urged that the testimony of a witness located more that 100 miles from the place of trial might be secured by deposition. This, of course, is true. However, any court recognizes that a "live" witness's testimony is better than testimony by deposition. See Arnstein v. Porter, 2 Cir., 1946, 154 F.2d 464, 469–470; Napier v. Bossard, 2 Cir., 1939, 102 F.2d 467, 468–469. See, also, Fed.R.Civ.P. 26(d) (3); 4 Moore, Federal Practice, Par. 26.30. Furthermore, if, in the present situation, the testimony of the three witnesses in question had been taken by deposition, it is obvious that it would have been testimony which could only have been taken on an open commission with a right of cross-examination by the adverse party. Under those circumstances the Court would have required that the defendant pay the expenses of one of plaintiffs' attorneys to travel to Great Britain for the purpose of participating in the deposition, and could have taxed the expenses and fees of such attorney as costs. S.D.N.Y. Civil Rule 4. See, also, Ryan v. Arabian Oil Co., supra; 4 Moore, Federal Practice, Pars. 30.14; 26.36. The expenses of an attorney for each side going to Great Britain for the purpose of taking the depositions would have been at least as great as those involved in bringing the witnesses to this country so that they might testify in person. It has been urged that to tax as costs the bringing of witnesses from far places might great-

2. Plaintiffs urge that the Second Circuit case of Ludvigsen v. Commercial Stevedoring Co., 2 Cir., 1956, 228 F.2d 707, certiorari denied 350 U.S. 1014, 76 S.Ct. 660, 100 L.Ed. 874, is controlling here. However, the Ludvigsen case is an admiralty case and deals with a specific admiralty rule which provides that:

"Traveling expenses of any witness for more than one hundred miles to and from the court or place of taking the testimony shall not be taxed as costs." 28 U.S.C.A., Admiralty Rule 47.

The court held that this rule applied both to foreign and domestic mileages: However, no such specific Federal rule has been provided for civil cases.

ly increase the costs of litigation. However, the same objection could be made to taking the depositions of witnesses in far places. But one of the great advantages of the present Federal Rules of Civil Procedure is that it enables the parties to discover the facts no matter where they may be. The fact that such discovery may be expensive is not regarded as a reason for curtailing discovery, unless the expense is such that it bears no reasonable relationship to the evidence sought to be adduced.

While the limitation on taxable costs incident to the transportation of witnesses, of an allowance for not more than 100 miles or the limits of the District, seems to have been approved by numerous cases in all except the First Circuit. United States v. Sanborn, C.C.D.Mass. 1886, 28 F. 299, reversed on other grounds 1890, 135 U.S. 271, 10 S.Ct. 812, 34 L.Ed. 112; The City of Augusta, 1 Cir., 1897, 80 F. 297; The Governor Ames, 1 Cir., 1910, 187 F. 40, certiorari denied 1911, 223 U.S. 725, 32 S.Ct. 525, 56 L.Ed. 631, costs awarded on mandate, sub nom. Davis v. Smith, D.C.D. Mass.1912, 199 F. 538, it would seem that this limitation is no longer realistic and that to impose such limitation in actions such as the present one would be a complete negation of the clear provisions of the statute.

(3) The Stenographic Minutes of the Deposition of Peter W. Geiger.

The Clerk allowed the $580 cost of the stenographic transcript of this deposition, and plaintiffs ask that this cost be disallowed. Plaintiffs contend that Geiger was not an officer of the Bank of America but merely an employee, hired subsequent to the period with which the Thirteenth Count was concerned, for purposes of supervising the Bank's distribution of the films after the termination of defendant's exclusive rights under the distribution agreement. Plaintiffs contend that the deposition of this witness was solely investigative in nature and for the purpose of thorough trial preparation and was not directly involved with a matter in issue nor necessary to the case.

Plaintiffs point out that only seven pages of the 464 page transcript were read at the trial and say that this was not a significant use of the deposition and the matter read did not relate to the purpose for which the deposition was sought. Defendant, however, contends that the purpose of this deposition was to ascertain how the efforts of the Bank of America in the reissue distribution of the films involved in this case compared with the distribution efforts of the defendant in England in the original issue of the films, which was the matter with which the Thirteenth Count was concerned. Defendant says that Geiger was the employee in charge of the exploitation of plaintiffs' films during their reissue and the only Bank of America employee examined before trial who was directly involved with distributing Enterprise Films. Defendant also says that Geiger was examined, among other things, with regard to the value of each of the Enterprise pictures, the considerations which determined its suitability in each of the foreign markets and the revenues which could be expected therefrom, the difference in tastes between American and European audiences, the classifications given to pictures abroad and the manner of distribution of the pictures in England. Defendant says that if Geiger's testimony, which related in detail to the English market, was not more extensively read, it was merely because defendant, at that stage in the trial, found it unnecessary to do so.

The Court finds that this deposition was necessarily obtained for use in the case in that it was reasonably necessary to defendant's case in the light of the situation existing at the time the deposition was taken. See 28 U.S.C. A. § 1920(2); Perlman v. Feldmann, D.C.D.Conn.1953, 116 F.Supp. 102, 109–112, reversed on other grounds 219 F.2d 173, certiorari denied 1954, 349 U.S. 952, 75 S.Ct. 880, 99 L.Ed. 1277. The examination of an employee of Bank of America in charge of the redistribution of the very films involved in this case, for purposes of obtaining evidence on

the marketability of plaintiffs' films and comparisons of marketability in the United States and England, would seem very relevant to the issue involved in the Thirteenth Count. The fact that the deposition was only minimally used as evidence at the trial, in light of the developments at trial, is not grounds for failing to tax the cost of this stenographic transcript of the deposition to the plaintiffs.

> "As a general principle the costs of taking depositions will be taxed in favor of the prevailing party, if the taking of the depositions was reasonably necessary, even though they may not have been used at the trial." 4 Moore, Federal Practice, Par. 26.36 at page 1207.

See, also, Donato v. Parker Pen Co., D.C. S.D.N.Y.1945, 7 F.R.D. 148; Hancock v. Albee, D.C.D.Conn.1951, 11 F.R.D. 139, 141; Perlman v. Feldmann, supra; National Comics Publications v. Fawcett Publications, D.C.S.D.N.Y.1950, 93 F. Supp. 349, 359, reversed on other grounds, 1952, 191 F.2d 594, 198 F.2d 927; 6 Moore, Federal Practice, Par. 54.77 [4]. It must also be remembered that the Thirteenth Count, which was ultimately reduced to the issue of whether defendant had exercised its best distribution efforts in England, initially was also concerned with defendant's distribution efforts in some 400 different countries. It appears that Geiger's deposition was taken in good faith by the defendant and that it was directly concerned with matters involved in the issues of the Thirteenth Count. The deposition does not appear to have been merely of an investigative nature, or serving only the purposes of thorough preparation, as the plaintiffs contend, but appears to have been reasonably necessary at the time the deposition was taken for the obtaining of facts of value to the defendant's case.[3] The Court thus affirms the determination of the Clerk in taxing the cost of the transcript of the Geiger deposition.

(4)   Stenographic Transcript of the Pre-Trial Proceedings

The pre-trial conference was held pursuant to Rule 16 of the Rules of Civil Procedure. The Clerk taxed the cost of the transcript of this conference, in the amount of $224.18, to the plaintiffs. Plaintiffs concede the ultimate taxability of the cost of this item as between the parties, but seek to postpone such taxation of costs until the trial of the remaining seven counts. Plaintiffs contend that the pre-trial conference dealt with all the causes of action which plaintiffs have and that it would be improper to tax the cost of the conference after the trial of only the one count. Defendant, however, contends that the pre-trial conference was concerned mostly with the clarification of the issues of the Thirteenth Cause of Action for the first trial, and that there will have to be further pre-trial conferences on the remaining counts and with many issues to discuss in relation to them.

It is clear that the cost of the transcript of the minutes of the pre-trial proceedings may be allowed as a cost of the case, and particularly is this true where the pre-trial proceedings devoted considerable efforts to the limiting and clarifying of issues, were conducted at considerable length and where a proper

---

3. See 6 Moore, Federal Practice, Par. 54.-77 [4] page 1361. However, by finding that the deposition meets this test, the Court does not determine that costs could not be awarded if the deposition was primarily investigative but was taken in good faith in preparation for trial and for discovery relevant to the case under the discovery rules. Cf. Perlman v. Feldmann, supra, 116 F.Supp. at page 110, where Judge Hincks suggests that "when a deposition is taken within the proper bounds of discovery as delineated by the Federal Rules, at least one transcript thereof * * * will normally be found to be necessarily obtained for use in the case, whether or not the deposition is actually offered or used in the trial." See, also National Comics Publications v. Fawcett Publications, supra, 93 F.Supp. at page 359.

understanding of the matters covered and preparation of a pre-trial order could not properly be had without a transcript thereof. See, e.g., Brookside Theatre Corp. v. Twentieth Century-Fox Film Corp., D.C.W.D.Mo.1951, 11 F.R.D. 259, 266, affirmed 194 F.2d 846, certiorari denied 1952, 343 U.S. 942, 72 S.Ct. 1035, 96 L.Ed. 1348.

A substantial part of the pretrial conference was devoted to the issues set forth in the Thirteenth Cause of Action. However, there were involved in the pre-trial conference issues relating to the other causes of action which have not yet been tried and which will be tried by the Court without a jury. It would therefore seem proper to apportion the cost of the transcript of the pre-trial conference and award such part of the cost at the present time as relates to the matters contained in the Thirteenth Cause of Action, which has been tried. The Court therefore directs that one-half of the cost of the transcript of the pretrial conference be taxed at the present time; and that the balance of the cost of the transcript of the pre-trial conference shall not be taxed until after the conclusion of the trial of the remaining issues.

The Court therefore directs that there shall be added to the bill of costs of defendant the following items:

(1) Stenographic transcript of trial proceedings, less so much thereof as contains the opening and closing arguments to the jury, or oral argument made on motions to dismiss.

(2) The expenses of travel, at the lowest first-class rate available, for the three witnesses of the defendant required to travel from England to the United States to testify at the trial.

(3) The stenographic minutes of the deposition of Peter W. Geiger.

(4) One-half of the cost of the stenographic transcript of the pre-trial proceedings.

So ordered.