## SYRACUSE BROADCASTING CORPORATION, Plaintiff,

v.

**Samuel I. NEWHOUSE, the Herald Company, the Post-Standard Company and Central New York Broadcasting Corporation, Defendants.**

### Civ. No. 4548.

United States District Court
N. D. New York.

Jan. 3, 1963.

Smith & Sovik, Syracuse, N. Y., Laurence Sovik, Martin F. Kendrick, Syracuse, N. Y., of counsel, for plaintiff.

Bond, Schoeneck & King, Syracuse, N. Y., William F. Fitzpatrick, Tracy H. Ferguson, Syracuse, N. Y., of counsel, for defendants.

JAMES T. FOLEY, District Judge.

The defendants move in this prolonged litigation directly for an order by the Court to tax costs and disbursements. The motion is supported by an affidavit in the form of the bill of costs ordinarily submitted to the Clerk of the Court itemizing the nature and amount of costs sought to be taxed as prevailing parties. (Rule 54(d), F.R.Civ.Proc.) The attorneys for both sides seem satisfied to adopt this procedure and bypass the Clerk in the first instance. Judicial authority with reasoned interpretation also sanctions the procedure. (Deering, Milliken & Co. v. Temp-Resisto Corp. (S.D.N.Y.), 169 F.Supp. 453, 456; 28 U.S.C.A. § 1920.) In fact, the substantial items challenged are ones peculiarly within the knowledge of the trial judge and would be practically an impossible burden for the Clerk to resolve with any degree of reason and certainty. An affidavit in opposition to the motion is filed with general and specific objections by the plain-

tiff corporation that would reduce the total amount of the costs substantially.

On the question presented it is unnecessary to review the history of the litigation except to state it has been a source of judicial travail in this District Court and the Court of Appeals, Second Circuit. The complexity expected in anti-trust action was compounded by confusion and perplexity that arose in the use of pretrial procedure always dependent to a great degree for effectiveness upon willing and cooperative spirit of the attorneys. Finally, a trial to a jury at which I presided in the City of Syracuse was held from June 1 to July 30, 1962, and as the record indicates by decision read from the bench at the close of the plaintiff's evidence, I peremptorily instructed the jury to return a verdict in favor of all defendants on the remaining anti-trust claims. The record for this half-way mark of the trial totals 4412 pages.

The first serious, overall objection to the costs is that the daily copy of transcript furnished at the trial to the attorneys for both sides and the Court was not necessarily obtained for use in the case. (28 U.S.C.A. § 1920(2).) It is my reflective judgment that began to form several days after the trial commenced that the daily transcript for the attorneys and Court was indispensable if there was to be any realization of intelligent and orderly presentation of evidence to a jury on complicated and blurred issues that had given trained lawyers and judges difficulty to unravel over a period of almost ten years. I read the daily transcript every morning before trial, at night at the hotel or my home on weekends to make notes in preparation for rulings and decisions on motions and evidentiary problems that were not the ones that a judge with experience decides with some ease. The eventful day of charge to a jury also had to be anticipated.

There was a shifting in theory of the claims from previous positions throughout the trial, together with offer of complicated summary and change in documentary exhibits that made daily transcript imperative to use for review of the past in the many legal discussions held in Chambers. There was a mass of evidence that could only be related and kept abreast of for proper understanding of the case by reference to the previous daily transcripts and that was done, to my observation, often by the attorneys and the court in Chambers and in the Courtroom. (Bank of America v. Loew's International Corp. (S.D.N.Y.), 163 F. Supp. 924, 927; Brookside Theatre Corp. v. Twentieth Century-Fox Film Corp. (W.D.Mo.), 11 F.R.D. 259, 266; see discussions Perlman v. Feldmann, D.C. Conn., 116 F.Supp. 102; 6 Moore's Federal Practice 2d Ed., pgs. 1371–1375.) This general objection is not well taken.

Surprisingly, the plaintiff objects to the 50¢ per page charge for the daily court copy furnished, of which cost the defendants seek to tax one-half the cost, in the amount of $1,176.50. It is claimed such charge would violate the local rule of this District Court to the effect that such expense shall be a taxable cost when the transcript is ordered by the Court. Our practice in this District is the same as outlined by Judge Hincks in the Perlman case, supra, at page 106. I assumed there was understanding between the attorneys to share the cost for the court copy, and their conduct and actions throughout the trial gave no reason to believe otherwise. No mention was made directly or indirectly of the local rule or any request to the Court of necessity to order daily transcript in accord with its provisions. Such conduct may in effect be a waiver, and if such direction be necessary this ordering memorandum-decision nunc pro tunc directs the copy of the daily transcript for court use. Judge Palmieri ruled recently that a federal judge's failure to order a stenographic transcript that he found indispensable does not bar from inclusion in costs a reporter's fees for the transcript. (In re Texaco, Inc. (S.D.N.

Y.), 210 F.Supp. 390.) This objection is overruled. It should be noted that the attorneys for the plaintiff received added service and value from the copy that was furnished to me. At the request of Mr. Sovik, on the return day of this motion, I turned over my court copy of the voluminous transcript to his associate counsel in order that it could be filed in the Clerk's office in Utica to perfect and expedite the pending appeal. The attorneys for the plaintiff now have the convenience of retaining their single copy in their Syracuse office to brief and prepare for appeal without the need for travel to Utica to inspect the record or the purchase of an additional copy from the reporters.

It was necessary to read the newspaper exhibits into the record and again there was no objection by the attorneys for the plaintiff, formal or informal, that I am aware of. It is true there were many newspaper pages and items exhibited by a Recordak viewer, but such technique did not satisfactorily project the evidence to a jury. After a short time of trial and error, it was my judgment, apparently agreed to by the lawyers, that it would be better for a witness to read from the viewer, and on occasions in the judgment of the lawyers allow the jurors to view the microfilm itself to see the display and arrangement feature of the newspaper pages. Other newspapers were presented in separate large bound volumes obtained from the State Education Department of New York, whose officials made several inquiries of concern to the Court for their safekeeping and request for return within a reasonable time. There were a number of tear sheets of other newspapers introduced in evidence. The lawyers did a commendable job of marking and keeping track of these diverse exhibits, heavy books of bound newspapers and rolls of films that had been displayed on the whirring Recordak, but one had to be on the scene to realize the obvious difficulty in referring back to these exhibits when the need arose. The lawyers—if the stage of summation had been reached—in my judgment, would have had to put forth superhuman effort to run around, collect and gather these exhibits for reference. The reading into the record of this considerable number of newspaper pages was necessary and put this array of unusual type exhibits in one place. Endless confusion and time-wasting would have resulted if it were done otherwise. I cannot conceive how the exhibits, with their bulk and technical handling, could have been presented with any efficiency to an appellate court for review.

The sole question on this phase is the amount that should be allowed to be taxed as costs for a single copy of the daily transcript. I do not know the formula or expertise of the Court reporters in the breakdown of their charges. I do know there is necessity to assemble three or four typists and keep at work steadily for hours. During the trial, as I understand it, the copies of the day's transcripts were delivered to the attorneys each night. There is an averaging of copy costs in the Perlman case, supra, but there is also reasoning in that case that the item should be taxed at actual cost, and the defendants are entitled to tax costs in the amount of $1.50 for the prime or original page. That amount was billed and paid. From my viewpoint, this charge lessened the cost to 90¢ of the copy furnished to the plaintiff and the 50¢ cost for the court copy. Therefore, there is allowed $1.50 per page for the single copy, in the amount of $7,059.00, with the one-half cost of the court copy, $1,176.50, totalling $8,235.50, and such amount is taxed.

The costs applicable to the trial commencing November 28, 1960 are allowed in the full amount of $1,109.25, as set forth in the supporting affidavit. Chief Judge Brennan presided at the first trial, but it seems fair conclusion that my reasons outlined above would support the necessity and indispensability of daily copy transcript at the first

trial. The pre-trial proceeding transcripts played an important part in the decisions handed down by the Court of Appeals in the second and third opinions, filled with detail on pretrial procedures, discovery and admission items. (Syracuse Broadcasting Corp. v. Newhouse, 2 Cir., 271 F.2d 910; 295 F.2d 269.) The complicated pre-trial picture, at least for one who came on the scene much later, and the pre-trial appellate directions could never have been analyzed or kept clear without the discussions had between court and counsel previous to the formal preclusion orders and compliance documents. There was intense dispute on many of the items and ruling in many instances could only be made intelligently at the second trial after listening to or reading again the previous pre-trial transcript. (Bank of America, supra, 163 F.Supp. pgs. 931, 932.) In my judgment, the pre-trial transcripts were necessary for use in the case at the first trial, appellate reviews and the second trial.

The expense of preparing the newspaper prints in the amount of $687.-63 is disallowed and the objection thereto is sustained. My feeling is that although it is apparent and recognized that such prints would be most helpful, the Court of Appeals gave sanction to other type presentation that may have been available. Such items have to be placed in the status of preparation and use by the defendants for purposes of perhaps clearer presentation, but for reasons of their own trial strategy and convenience.

To summarize, the costs are hereby taxed in the total amount of $9,374.75 instead of the total amount of $11,238.88 as set forth in the proposed bill of costs attached by affidavit to the motion. The objections are sustained to reduce the fees of the court reporter to be taxed for daily transcript as costs applicable to the trial commencing June 1, 1962 to $8,-265.50. The expense of $687.63 for exhibits is disallowed as proper cost. The total reduction from the proposed bill of costs is $1,864.13.

The motion is granted to the extent that the items of costs contained in the supporting affidavit dated September 25, 1962 are allowed and taxed except as indicated. If there is error in computation seemingly not in accord with my reasoning herein, this order may be re-. settled on three days' notice.

It is so ordered.