JULIO GARRIGA, JR., Petitioner, v. SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, ÁNGEL M. UMPIERRE, JUDGE, Respondent; COMPAÑÍA DOMINICANA DE EXPORTACIÓN E IMPORTACIÓN, Intervener.

No. C-62-29.    Decided May 2, 1963.

238

*Francisco Torres Aguiar* for petitioner. *Ponsa Feliú & Calderón* for intervener.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE RIGAU delivered the opinion of the Court.

What are costs? Which expenses are included in that concept? Has the trial court discretion to award them, and if so, how should it be exercised? These are the questions posed in this appeal.

I

An action having been decided in the Superior Court, plaintiff, which was also the prevailing party, submitted to the trial court its Memorandum of Costs, a copy of which is attached hereto as appendix. (We have numbered the items of that memorandum in order to facilitate reference thereto.) Defendant therein, petitioner herein, challenged all the items with the exception of Nos. 1, 2, 8, 13 and 14.[1] At the hearing petitioner withdrew his objection to items 3, 4, 5, 6, 7 and 9.[2] He left standing his challenge of items 10, 11, 12 and 15 to 24, inclusive. As to the concepts and amounts of those items, we refer to the appendix.

The corresponding hearing having been held, the Superior Court dismissed the challenge and approved the Memorandum of Costs in its entirety.

Defendant-appellant's position may be summed up as follows: The amount of the items challenged is not in dispute,

---

[1] These are: Filing of complaint, Summons, Attachment directed to Dr. José M. González, Nonresident bond, and Renewal of such bond.

[2] Attachment in Registry of Property of San Juan, Certificate of Writ of Attachment, Writ of Attachment of Ford automobile, Additional writ Registry of Property, Marshal's expenses, and Return of Writ of said Attachment.

but rather the propriety of its payment as a matter of law. Payment of the partial transcript of the evidence (item 10) does not lie because it was not ordered by the court, as required by subd. 4 of § 327 of the Code of Civil Procedure, 32 L.P.R.A. § 1461(4). Payment of items 11 and 12 (attachment bond and renewal of such bond) does not lie "because they are not necessary expenses and disbursements incurred in this action, nor do they constitute a disbursement necessarily made in connection with the prosecution of this action and which may be subject to the schedule of fees." Payment of items 15 to 24 does not lie either because they do not constitute necessary expenses or disbursements payable by appellant. So far appellant's position.

We find two provisions on the same matter: § 327 of the Code of Civil Procedure and Rule 44.4 of the Rules of Civil Procedure. The question for decision is mostly to determine the legislative intent underlying those two provisions and to reconcile them, if that is possible, and if not, to decide which one of the two will prevail.

██ Let us remember that no problem of attorney's fees is involved in this case. In Puerto Rico attorney's fees do not form part of the costs. *Arroyo* v. *Municipality*, 81 P.R.R. 425, 428–30 (1959). Section 327 of the Code of Civil Procedure expressly specified the expenses or disbursements comprised in the term costs. Subdivision 6 thereof makes it possible to include within that term "any . . . expense necessarily incurred in connection with the processing of the case, which the court deems proper," but it limited them to be subject to the schedule of fees. The imposition of costs on the losing party is mandatory, *Arroyo* v. *Municipality*, *supra* at 428, and the section cited should be strictly construed without going beyond its literal meaning. *Luzunaris* v. *Díaz*, 23 P.R.R. 616 (1916); *Martínez* v. *Pagán, López & Co.*, 17 P.R.R. 582 (1911); *Modesto et al.* v. *Estate of Dubois*, 16 P.R.R. 709 (1910).

The Rules of Civil Procedure of 1958 regulate costs and attorney's fees. Rule 44.4 maintains the principle of compulsiveness; costs must be awarded to the party in whose favor the action is decided or judgment on appeal is entered, except, of course, in those cases in which it is otherwise provided by law or by the Rules. Subdivision (b) of Rule 44.4 prescribes the manner for claiming, challenging and awarding costs. That subdivision also defines the term costs. It should be noted that the former § 327 does not contain a definition of costs, but says that they "shall comprise the following expenses," and specifies certain expenses which are thus comprised within the term costs. On the contrary, Rule 44.4 does not enumerate a specific number of expenses, but contains a definition in general terms. After providing that "costs shall be allowed to the prevailing party," Rule 44.4 provides that "the party who claims his costs must file with the court . . . a statement or memorandum of *all items of expenses and necessary disbursements incurred in the action or proceeding*." (Italics ours.)

As may be seen, we are faced with a conflict between § 327 and Rule 44.4 and it is necessary to decide whether the express criterion of § 327 is upheld or whether the definition of the Rule *supra* governs. In other words, either the costs are the expenses specified in § 327 and such other expenses as are necessary but which are subject to the schedule of fees, pursuant to subd. (6) of that section, or they are "all the items of expenses and necessary disbursements incurred in the action or proceeding." Rule 72, which is the repealing clause of the Rules of 1958, does not solve the problem because it leaves § 327 in force "in part," but it does not say which part remained in force and which part has been repealed. As to the legislative intention of § 327, no problem is raised because, in addition to the fact that the text thereof is explicit, the same has been construed, as stated hereinabove. As to the "legislative intention" of

the Rules, we are faced with the strange situation that we are searching for our own intention, namely, the intention of this Court, since, as is known, the Rules of Civil Procedure were adopted by this Court and transmitted to the Legislative Assembly of Puerto Rico (pursuant to Art. V of the Constitution), and, not having been disapproved, they took effect.

## II

Maitland wrote that such is the unity of history that the oldest known utterance of English law contains Greek words.[3] Examples of such "unity of history" are many and one of them—in the history of law—is this matter of costs. Who should pay them and why, is a vexatious problem which time and again has occupied the attention of jurists and lawmakers from ancient times. The problem recurred, and recurs, tinted with ethical hues. The principle that the expenses of litigation should be borne by the litigant who claims that to which he is not entitled, by the one who by his conduct compels the party entitled thereto to defend himself or to resort to court in order to assert his right, and by the party who litigates for the purpose of delaying justice, arises universally, though slowly. The history of Roman law covers more than a millenium and, as is to be expected, the solution was not always the same. Most of the times the trier had discretion to impose the costs on the losing litigant, and when that law was codified under Justinian in the first half of the sixth century it was established, as a rule, that the losing party would reimburse to the prevailing party the costs of the proceeding. The scholars of the history of law believe that that principle came into the European medieval law through the canonical law. It is expressly contained in the *Siete Partidas* and later it was

---

[3] Select Essays in Anglo-American Legal History, p. 7, edited by the Association of American Law Schools, Boston; Little, Brown and Company, 1907.

incorporated in the modern European continental legislation.[4]

In the old English common law the term costs, as reimbursement of the expenses of the action to the successful party, did not exist, although the losing plaintiff was fined "pro falso clamore" and the losing defendant was at the judge's mercy ("in misericordia"), who could impose fine.[5] Those fines for unfounded litigation were not reimbursements to the successful litigant, but went to the public treasury.[6] Such situation of the old common law changed. Since the fine did not represent any satisfaction for the prevailing party, in the thirteenth century the judges began to award costs to the successful party. In 1275 the Statute of Gloucester made the award of costs compulsory in favor of successful plaintiffs, and subsequently it was placed on an equal footing with the victorious defendants.[7]

Yet, in the English law of equity from early times the Chancellor awarded the costs to the prevailing party. It is believed that this practice of the English law of equity has its roots in the canonical law, since the Chancellors who passed judgment in equity were usually clergymen in the formative era of such right.[8] Nowadays the English courts

---

[4] Engelmann, History of Continental Civil Procedure 317, 402–03 (1927), cited in *Distribution of Legal Expenses Among Litigants*, 49 Yale L.J. 699, 704–05 (1940); *Nueva Enciclopedia Jurídica* 856–85 (Seix ed., Barcelona, 1953).

[5] It is strange that the old English common-law term used to express that the losing plaintiff was fined for his false claim was "he was *amerced* pro falso clamore."

[6] *Day* v. *Woodworth*, 13 How. 363, 372 (1851); 4 Holdsworth, History of English Law 536–38 (1924); Hullock, Law of Costs 2 (1792), cited in *Use of Taxable Costs to Regulate the Conduct of Litigants*, 53 Colum. L. Rev. 78, 79; 6 Moore, Federal Practice 1302, § 54.70 (2d ed. 1953).

[7] Holdsworth, *op. cit.* at 537; Hullock, *op. cit.* at 4; 49 Yale L.J. 700.

[8] Originally the Chancellor was an official executive, counsellor and man trusted by the King; sometimes they were men of exceptional ability and patriotism, attained considerable power, and on those occasions the

award the costs to the victorious party, including attorney's fees, and use such power wisely as a means of discouraging unfair and dilatory litigation.[9]

In the United States the statute in the federal jurisdiction is permissive, 28 U.S.C. § 1920 ("A judge . . . *may* tax as costs the following . . ."), and the federal Rule provides that the costs shall be allowed to the prevailing party unless the court otherwise directs, Rule 54(d).[10] As may be seen, the Rule *supra* vests the court with sound judicial discretion, *Euler* v. *Waller*, 295 F.2d 765 (1961); *Schauffler* v. *United Ass'n of Journeymen & Apprentices, etc.*, 246 F.2d 867 (1957); *Kellems* v. *California CIO Council*, 6 F.R.D. 358 (1946). It has been held that costs in the federal jurisdiction are not limited to those specified in the statute, but additional costs are allowable in the discretion of the court, *Gotz* v. *Universal Products Co.*, 3 F.R.D. 153 (1943). The court's ruling on costs generally is not disturbed on appeal, *United States* v. *Arizona Canning Co.*, 212 F.2d 532 (1954), but in extreme cases such ruling may be disturbed for abuse of discretion, *McKnight* v. *Akins*, 192 F.2d 674 (1951). For a discussion and case law on this matter, see 3 Barron & Holtzoff, Federal Practice and Procedure 43–77, §§ 1195–1201 (1958).

---

Chancellor was sort of a Secretary of State and Prime Minister combined. Whenever the Chancellors were unable to discharge the judicial function (in equity), clergymen and also common-law attorneys were designated for that function. Plucknett, A Concise History of the Common Law 657 (4th ed. 1948); *Guardian Trust Co.* v. *Kansas City Southern Ry. Co.*, 28 F.2d 233, 240 (1928).

[9] Goodhart, *Costs*, 38 Yale L.J. 849, 861–62 (1929); *Deterring Unjustifiable Litigation by Imposing Substantial Costs*, 44 Ill. L. Rev. 507, 509–11 (1949), 53 Colum. L. Rev. 80, n. 13.

[10] The pertinent part of that Rule reads as follows:

"Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; . . ."

Costs, of course, are. not all the expenses incurred in the litigation. The greater part of the cost of litigation is paid by the community through a political agency, the State. Maintenance of the judicial establishment in Puerto Rico costs the community several million dollars a year; it is one of the prices of peaceful and civilized life.[11] Costs are the expenses necessarily incurred in prosecuting the action or proceeding which the law directs a litigant to reimburse to the other, or authorizes the court to so direct. The reason why the law directs that the losing litigant reimburse the costs to the prevailing party is to enable the victorious party to recover his expenses; his right should not be diminished by the expenses which he had to incur through no fault of his and through the adversary's fault. In mentioning this reasoning, the English and American literature say that the purpose is "to make him whole." Another reason adduced is the dissuasive effect that this Rule has on the obstinate and vicious litigation and that which is carried out for the purpose of delaying justice. It should be noted that those two considerations, to reimburse to the party compelled to litigate and to punish vicious litigation, were borne in mind by the judges in the Roman law and in the English equity when awarding costs. Federal Rule 54 has its roots in equity and, as we shall presently point out, our Rule 44.4 is taken from the Federal Rule, via Utah.[12]

---

[11] For the fiscal year 1962–63 the Legislative Assembly of Puerto Rico appropriated $6,127,934 for the Judicial Branch. Information furnished by the Office of Court Administration.

[12] 3 Barron & Holtzoff, Federal Practice and Procedure 6 (1958); 6 Moore, Federal Practice 1302, § 54.70(2) (2d ed.); 74 Harv. L. Rev. 1465; Lyman, "Our Obsolete System of Taxable Costs", 25 Conn. Bar J. 148, 150 (1951); Goodhart, Ibid., 53 Colum. L. Rev. 80, n. 13; 27 Colum. L. Rev. 974; 44 Ill. L. Rev. 507, 510–20.

The Judicial Code of the United States provides that any attorney who multiplies the proceedings so as to increase the costs unreasonably and vexatiously may be required by the courts to satisfy personally such excess costs, 28 U.S.C. § 1927; Weiss v. United States, 227 F.2d 72 (1955), cert. denied, 350 U.S. 936, rehearing denied, 350 U.S. 977.

Dealing on this matter we find that in the Spanish literature Prieto says that "By costs is meant the total disbursements which it is necessary to make within a trial for the attack or defense of a right," and he adds:

"The broadness of the award of costs is determined by the definition thereof. Since the disbursements are necessary for the attack and defense of the right, the disbursements incurred by actions not necessary for those purposes, nor those due to fault or private interest of the prevailing party, can not be included therein.

"In accordance with this principle, the fees corresponding to writings, procedures and other actions which may be useless, superfluous or not authorized by law, are not computed in the assessment of costs."[13]

It cannot be gainsaid, says Guasp, "that the litigant, at least the losing litigant, even if he is not at fault, is the immediate cause of the existence of the action, because his resistance or unjustified contention implies that the economic charge of defraying the expenses of the proceeding may not cause him inconvenience; nor should we overlook the fact that the problem raised by the existence of claims or oppositions set up by parties lacking sufficient economic funds to resort to a suit, may be resolved by a satisfactory order of the benefit of forma pauperis."[14]

Chiovenda says:

"The basis of this award is the objective fact of the defeat; and the justification of this institution lies in the fact that the action of the law should not represent a patrimonial diminution for the party who prevailed, for it is in the State's interest that the utilization of the proceeding should not cause damage to the party who was right, and, on the other hand, it is in the interest of the juridical commerce that the rights have a precise and constant value, if possible."[15]

[13] II Prieto, *Derecho Procesal Civil* 568, 575 (1956).

[14] I Guasp, *Derecho Procesal Civil* 585 (2d ed. 1961, Madrid).

[15] III *Instituciones de Derecho Procesal Civil* 355 (1954, Madrid).

## III

In its comments on our Rule 44.4 (b), which is the provision involved herein, the Advisory Committee which drew up the preliminary draft of the rules says that "The proposed text does not correspond to any existing or federal rule and it is similar to that of Rule 54 (d) (2) of the Rules of Civil Procedure of Utah." Draft of Proposed Rules of Civil Procedure, 1954 (mimeographed), p. 109. The pertinent part of the Utah rule is copied below.[16]

In *Hull* v. *Goodman*, 290 P.2d 245, 247 (1955), the Supreme Court of Utah stated that Rule 54 (d) was taken by that state from the federal rule by the same number. The court points out that the Utah rule refers to "costs and necessary disbursements" and that it left the question in the discretion of the courts, thereby expressing the amplitude of that provision. Not identically but in a similar manner our rule speaks of "all items of expenses and necessary disbursements incurred in the action or proceeding."

Construing Federal Rule 54 (d) from which, as has been seen, the Utah and Puerto Rico Rules are actually taken, it has been held that under this Rule the courts have wide discretion in the fixing of costs, and in this case costs were allowed for expenses incurred in travel of three witnesses from England to New York and return trip. The court ruled that the testimony of those witnesses was relevant, material and necessary to the disposition of the case. It rightly stated that the real issue was whether the testimony of the

---

[16] "The party who claims his costs must within 5 days after the entry of judgment serve upon the adverse party against whom costs are claimed and file with the court a verified memorandum of the items of his costs and necessary disbursements in the action or proceeding stating that to affiant's knowledge the items are correct, and that the disbursements have been necessarily incurred in the action or proceeding. A party dissatisfied with the costs claimed may, within 5 days after service of the memorandum of costs, file a motion to have the bill of costs taxed by the court in which the judgment was rendered." Utah Code, p. 634.

witnesses was necessary, rather than whether they were located more than 100 miles from the court. *Bank of America v. Loew's International Corporation*, 163 F.Supp. 924, 928–29 (1958).

In *Maresco* v. *Flota Mercante Grancolombiana*, 167 F.Supp. 845 (1958), costs were allowed for travel and subsistence expenses for two witnesses one of whom traveled from Bogota, Colombia, and the other from Portland, Oregon, to testify in New York. Costs were allowed for depositions in *Freedman* v. *Philadelphia Terminals Auction Co.*, 198 F. Supp. 429 (1961), and *Bennett Chemical Co.* v. *Atlantic Commodities, Ltd.*, 24 F.R.D. 200 (1959). Translation expenses were allowed in *Bennett Chemical Co.* v. *Atlantic Commodities, Ltd., supra.* Expenses for photostatic copies were allowed in *General Gas Co.* v. *Stanchfield*, 23 F.R.D. 58 (1959), and for maps and photographs in *Stachon* v. *Hoxie*, 190 F.Supp. 185 (1960).

▬▬ In the light of the development of the term costs, of its purpose and history, and of the origin of our Rule 44.4, which we have pointed out, we hold as follows:

(1) Section 327 of the Code of Civil Procedure, 32 L.P.R.A. § 1461, covers judicial costs, except subdivision 2 thereof, which authorizes costs for expenses of deeds and certificates from the Registry of Property and of any official records which may have been admitted in evidence. However, that subdivision confines itself to copies and certificates for which there is a schedule of fees fixed by law. Rule 44.4 expressly amended § 327 *supra,* since it authorizes the award of costs of "all items of expenses and necessary disbursements incurred." The result is that the requisite of subd. 6 of § 327 to the effect that the necessary expenses to be included in the costs must be subject to the schedule of fees, was eliminated. The Rule empowers the court to determine which are those expenses in each case (the word disbursement is synonymous with expenses and adds nothing) incurred in the action or proceeding.

(2) Trial courts must exercise such discretion liberally and shall examine carefully the memoranda of costs in each case, particularly when the costs claimed are challenged.

(3) The costs contemplated in Rule 44.4 are expenses (a) necessary, (b) incurred, and (c) reasonable. Their reasonableness shall be determined in accordance with the economic reality of Puerto Rico, and as to the personal expenses, the economic condition of the persons involved (witnesses and litigants) shall also be borne in mind. No unnecessary, superfluous or extravagant expenses shall be allowed.

■ A sound norm consists in that in a case where a party proposes to incur important costs, as for example travel and subsistence expenses of witnesses (as in the case at bar) and depositions, they are stipulated or agreed upon at a pre-trial conference if this is possible (not necessarily the sums, but the nature of the expenses), and if this is not possible, the court's approval is requested, of course, with prenotice thereof to the other parties. These may include the transcript of evidence. The court will thus be able to authorize those important expenses which may be necessary and disallow those which may not be necessary. In the case of expenses already disallowed and in the case of unnecessary, unreasonable or superfluous expenses, once they are challenged, the court may disapprove them. *Prashker* v. *Beech Aircraft Corporation*, 24 F.R.D. 305, 314 (1959); *Freedman* v. *Phila. Terminals, supra*.

■ Interrogatories and depositions are as a general rule more economical than the personal appearance of witnesses who reside far from the place of the trial. In the case at bar appellee alleges that defendant-appellant himself moved the court to issue summons to compel the appearance of Oliva and Hernández who had to travel from Santo Domingo, which appellant has not denied. In its ruling on this incident the trial court stated that "From a careful consideration of each and every one of the items contained in the Memorandum of Costs submitted by plaintiff, we conclude that each

and every one of those items constitutes, in the light of Rule 44.4 of the Rules of Civil Procedure, a necessary expense or disbursement of the action which plaintiff was obligated to file in order to assert a right guaranteed to him by law." We believe that the trial court did not abuse its discretion.

The writ issued will be quashed and the ruling of the Superior Court, San Juan Part, of January 4, 1962 will be affirmed.

## APPENDIX

*Julio Garriga, Jr.* v. *Superior Court and Cía. Dominicana de Exportación e Importación,* C-62-29

### MEMORANDUM OF COSTS

TO THE HONORABLE COURT:

Plaintiff respectfully moves the Court to approve the following memorandum of all the items of expenses and necessary disbursements incurred in the present action:

|  |  |  |
|---|---|---|
| 1. Filing of Complaint | $ | 6.00 |
| 2. Summons | | 1.25 |
| 3. Attachment in Registry of Property of San Juan | | 17.00 |
| 4. Certificate of Writ of Attachment | | .60 |
| 5. Writ of Attachment of Ford automobile | | 3.25 |
| 6. Additional writ for Registry of Property | | 3.00 |
| 7. Marshal's expenses | | 20.00 |
| 8. Attachment directed to Dr. José M. González | | 3.00 |
| 9. Return of said Writ of Attachment | | 5.25 |
| 10. Partial transcript of evidence on hearing of July 29, 1960 | | 25.00 |
| 11. Attachment bond S-6214 | | 42.50 |
| 12. Renewal of said bond | | 42.50 |
| 13. Nonresident bond S-6646 | | 9.50 |
| 14. Renewal of said bond | | 8.50 |

15. Passports Messrs. Oliva and Hernández to travel to Puerto Rico — 140.00
16. Plaintiff's cable to his attorneys in San Juan — 7.25
17. Vaccination of Messrs. Oliva and Hernández to travel to Puerto Rico — 7.50
18. Plane tickets to Puerto Rico for Messrs. Oliva and Hernández — 205.00
19. Hotel expenses in Puerto Rico during 20 days for Mr. Oliva — 184.90
20. Subsistence expenses for Mr. Oliva during same period — 122.00
21. Protest of check not honored by defendant — 15.00
22. Telephone calls from Ciudad Trujillo to San Juan — 209.95
23. Legalization of documents in Santo Domingo for the purposes of the suit — 180.00
24. Hotel and subsistence expenses for Mr. Hernández in Puerto Rico — 320.00

TOTAL $1,578.95

San Juan, Puerto Rico, September 13, 1961.
(Signatures and attestation are omitted.)